GEORGE R. KING and Another v. CITY OF DULUTH.

November 27, 1899.

Nos. 11,793—(91).

| 78 | 155 |
| s81 | 183 |

### Contract—Price of Extra Work—Charge to Jury.

The parties hereto entered into a written contract whereby the plaintiffs agreed to do certain work in the construction of a system of waterworks for the city. The contract provided that the city engineer should be the sole arbitrator as to all matters of dispute which might arise as to the execution of the work; and, further, that in no case should the contractors be entitled to recover for any extra work or alterations in the plans, unless the price therefor was first determined by the engineer and mutually agreed on in writing by the parties. Changes in the plan of the work were made which necessitated extra work, as plaintiffs claim, and they demanded that the engineer fix the price therefor, and that a written contract be entered into for the doing of the work. The engineer refused to so do. It was necessary that the extra work should be done in order to execute the contract, and the plaintiffs did it. Held, that the contract as to extra work was valid, and that the plaintiffs cannot recover compensation therefor without showing a compliance therewith, or that the engineer acted in the premises arbitrarily or dishonestly, or by reason of a demonstrable mistake of fact.

Action in the district court for St. Louis county to recover a bal-

ance due under a contract and a further sum for extra work and materials. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for $13,334.90.; and from an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.    Reversed.

*J. B. Richards,* for appellant.

No recovery for extra work can be had, unless it appears that the compensation has been determined as provided in the contract, or that this provision has been waived by defendant.    City of Duluth v. McDonnell, 61 Minn. 288; Shaw v. First Baptist Church, 44 Minn. 22; Johnson v. Howard, 20 Minn. 322 (370); St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222; Heard v. Dooly, 101 Ga. 619; O'Keefe v. Corporation, 59 Conn. 551; Vanderwerker v. Vermont, 27 Vt. 125, 133; Potter v. Holmes, 65 Minn. 377, 380; Weeks v. O'Brien, 141 N. Y. 199; President v. Pennsylvania, 50 N. Y. 250.    There was no waiver by defendant.    O'Keefe v. Corporation, supra; Ashley v. Henahan, 56 Oh. St. 559; Weeks v. O'Brien, supra; Stuart v. City, 125 Mass. 102.    The contract for the stated consideration of $32,000 was not abandoned, and a new contract made, because the contract provided for everything done and the manner of doing it.    St. Paul & N. P. Ry. Co. v. Bradbury, supra; O'Keefe v. Corporation, supra; Ashley v. Henahan, supra.    Unless plaintiffs intended to abandon their claim for extra compensation, they should have refused to do the work when ordered by the engineer, and have stood on their legal rights.    See also U. S. v. Behan, 110 U. S. 338; Anvil M. Co. v. Humble, 153 U. S. 540; McElwee v. Bridgeport L. & Imp. Co., 54 Fed. 627; Lake Shore v. Richards, 152 Ill. 59.

*J. L. Washburn* and *W. D. Bailey,* for respondents.

Where a person has been agreed on in a contract, who is to fix the price or give an architect's certificate, if he refuses on demand the contractor may do the work and recover a reasonable value.    Especially is this true where the contract provides that the engineer may make alterations or additions without affecting the terms or validity of the contract, and that the contractor shall receive reasonable compensation not to exceed prices specified, the prices to be determined by the engineer.    Potter v. Holmes, 72 Minn. 153, 157;

Starkey v. De Graff, 22 Minn. 431; St. Louis v. Kerr, 153 Ill. 182; Thomas v. Fleury, 26 N. Y. 26; Flaherty v. Miner, 123 N. Y. 382; Peck v. State, 137 N. Y. 372; Doll v. Noble, 116 N. Y. 230; Bowery, v. Mayor, 63 N. Y. 336; Nolan v. Whitney, 88 N. Y. 648; Bentley v. Davidson, 74 Wis. 420; Cunningham v. Fourth, 159 Pa. St. 620; U. S. v. Gibbons, 109 U. S. 200.

START, C. J.

The parties hereto, on December 16, 1896, entered into a written contract whereby the plaintiffs, for the sum of $32,000, to be paid by the city, agreed to do certain specified work for it in connection with a system of waterworks for the city. The contract was performed by the plaintiffs to the satisfaction and acceptance of the city, and this action was brought to recover a balance of $3,055 due on the contract, and the further sum of $13,837.80 for extra work and material done and furnished to the city. The jury returned a verdict for the plaintiffs for $13,334.90, and the defendant appealed from an order denying its motion for a new trial.

The complaint alleged four causes of action. The first was for the balance of the contract price, as to which the trial court rightly instructed the jury that the plaintiffs were entitled to recover the amount claimed. The second was dismissed by the court, and its ruling is not here complained of. The third was a claim for $247.80, consisting of three items,—the chipping of pipes to make them fit the joints, the caulking and tightening of joints, and the use by the city of the plaintiffs' men and outfit in making an inspection of the work. The plaintiffs claimed that this was no part of their contract, and that the services were rendered at the request of the city, as an independent undertaking. We find no error in the rulings of the trial court as to this cause of action.

The fourth was a claim for $9,824 for placing 1,228 cubic yards of broken stone in foundation under and on both sides the intake pipe, at the schedule price of $8 per cubic yard, less a credit of $259 for sand, which the plaintiffs were not required to use by reason of a change in the plans. The real controversy in this case arises over this alleged cause of action. A statement of the nature of the work provided for by the contract, and of the terms of the contract, is

essential to a clear understanding of the claims of the respective parties.

The city commenced the construction of an intake pipe to be used in connection with its system of waterworks, but before the work was completed the city concluded to let the balance of the work by contract. Plans and specifications and profiles, showing the work done by the city and that remaining to be done, were made, from which it appears that the work to be done was to continue a tunnel commenced by the city until it should open into the bottom of the lake, and then to lay and rivet a 60-inch steel pipe out some 1,500 feet, and place an anchor crib at the end thereof. The original profile showed that the bottom of the lake upon which the pipe was to be laid was for the greater part of its length a smooth surface of sand. Such plans and profiles were the basis upon which contractors were invited to bid for the work. The plaintiffs were the lowest bidders, and a written contract was entered into by the parties for the execution of the work, the here material terms of which are these:

The plaintiffs were to take up the work in all of its parts, as partly completed by the city, and finish the same, in accordance with the plans and specifications, and cover the intake pipe for its entire length with at least five feet of sand or gravel, and place riprap of rock around the submerged crib, and along the line of the intake pipe, as directed, great care to be taken to insure the pipe resting solidly on its foundation and being level and plumb; all work to be done under the direction and superintendence of the city engineer, who was to be sole judge and arbitrator as to the quantity and quality of all material and workmanship required under the contract; and as to all matters of doubt or dispute as to the meaning of the plan, or of any words or terms used in the specifications, his opinion was to be final and binding on the parties.

"The engineer shall have the right, subject to the provisions of the city charter, to make any alterations and changes, such as he may deem proper, at any time during the prosecution of the works in any line, grade, plan, detail, depth, form, or dimensions, of any part or portion of the work or works, or may add to the work contemplated in this contract such additional work as may be necessary

or desirable in order to fully complete the work commenced by this contract, or may omit any portion which may seem desirable. In the event of any changes, alterations, additions, or deductions being ordered by the engineer (and the engineer shall have full power to make and order the same, without in any way affecting the terms or validity of this contract), the contractor shall be entitled to receive fair and reasonable compensation wherever changes are made whereby the amount of work to be performed is increased beyond what was originally intended, and beyond what is called for under the terms of this specification. The full amount of such compensation must, however, in every case, be determined by the engineer, and mutually agreed upon in writing by the contractor and board of public works, before commencing such extra work or alteration; otherwise, no allowance shall be made the contractor in respect thereof, and he agrees hereby to forfeit all claim to extra compensation therefor or for damages incurred."

The contract also provided that, in case the engineer ordered additional work, the price of riprapping should not exceed $1.50 per cubic yard, and for rock in foundation under water not to exceed $8 per cubic yard.

It is admitted that the plaintiffs entered upon the work, and that when they had laid the seventh joint of pipe from the shore, and had placed around and along it the sand specified in and called for by the specifications, the action of the water upon the pipe so laid was such that it washed away the sand, broke the joint off, and rolled and moved the pipe to a considerable distance from its proper place; that, upon discovering this fact, the plaintiffs notified defendant, and advised it that the method provided in and by the terms of the contract for holding the pipe in position beyond the trench was not sufficient, and that some other method should be provided. Thereupon the defendant caused the pipe and its position to be inspected, and through its agent, the city engineer, ordered the plaintiffs to prepare and place broken rock around and along the pipe from the seventh joint outward, in place of the sand provided for in the original specifications and profile. The evidence tends to show that, as the work progressed, the bottom of the lake on which the pipe was to rest was found to be materially different from what it was represented on the original profile, in that it was a rough surface of rock, and that the plaintiffs were required by the engineer

to level it down, and lay a foundation of rock, making a bed on which to lay the pipe, and to continue the rockwork up its sides half or two-thirds of the way, which was done by divers under 25 to 70 feet of water. And, further, that, at the time the changes were made in the plan and the additional work ordered, the plaintiffs made a demand upon the city engineer that he fix the price for doing the work, and of the board of public works that it enter into a written contract for it. But the engineer refused to fix the price, and ordered them to proceed with the work as directed, which they did, insisting that it was extra work, and insisting, on their repeated demand, that he fix the price, so that a written contract therefor could be made. There was evidence, as claimed by the defendant, tending to show that the alleged rock foundation and wall along the side of the pipe was riprap work, and covered by the provisions of the contract as to the foundation for the pipe and the placing of riprapping along the intake pipe, as directed, and that the engineer so decided, and for that reason declined to fix a price for the work.

The claim of the city on the trial was that the provisions of the contract requiring that the price for all extra work ordered by the engineer should be fixed by him, and a written contract therefor made, was valid, and, it not having been complied with, there could be no recovery on the fourth cause of action; that the plaintiffs' remedy for the refusal of the engineer to recognize the work ordered as extra, and to fix a price therefor, was to refuse to do the work; and, further, that, in any event, the work was riprapping, for which no more than $1.50 per cubic yard could be recovered. The claim of the plaintiffs was to the effect that the work ordered was extra, and was "rock in foundation under water," as the term was used in the contract, for which they were entitled to recover not exceeding $8 per cubic yard. The trial court instructed the jury that

"The engineer, under the terms of this contract, was an arbitrator between these parties; stood in relation to these parties as deciding questions for and against the parties; stood in the position somewhat of a judge in relation to them; and he was to act as a judge and jury always seek to act, fairly and impartially between the parties, recognizing all rights of the contractor under the contract, and to an equal extent recognizing all rights of the city under the contract." And, further, "If you find that there was a change in

this contract, and if you find that that change increased the work of the contractor, that the contractor demanded of the engineer that he fix the compensation for that work, and that the engineer refused to so fix it, then the plaintiffs might go on and might maintain an action under the contract for that work. This is the very gist and foundation of this action." Also: "If you find that such change imposed labor upon the plaintiffs beyond what was intended, and beyond what was called for, under the contract, and that the plaintiffs demanded of the city engineer that he determine under the contract the full amount of compensation for such increased labor occasioned by the change aforesaid, and the city engineer refused to so determine such compensation, then the plaintiffs are entitled to recover of the defendant the fair and reasonable price for such additional labor as, under the evidence, they are entitled to recover, making due and reasonable allowance for the costs and value of the sand in place so omitted from said work."

The question whether the engineer, in deciding that the work ordered was not extra, and in refusing to fix a price therefor, did so arbitrarily or fraudulently, or by reason of a demonstrable mistake of fact, was not submitted to the jury. Nor was the question suggested to the jury other than as stated (if at all) in the first instruction above set forth.

The giving of the second and third instructions we have quoted is assigned as error, and raises all of the questions we deem it necessary to consider as to the fourth cause of action.

The contention of the defendant that the plaintiffs' only remedy, if dissatisfied with the action of the engineer, was to refuse to do the work, is untenable; for it clearly appears from the evidence that it was impossible to go on and complete the contract without doing the work which they claim to be extra, and which the engineer, by the very terms of the contract, had a right to order them to do. Equally unsound is the claim of the plaintiffs that the engineer refused to act in the premises at all, and therefore the case falls within the rule stated in Potter v. Holmes, 72 Minn. 153, 75 N. W. 591; for in this case the engineer did act, and did decide that the work ordered was not extra work, within the meaning of the contract, and therefore refused to fix a price for it. The provisions of the contract in question are valid and wholesome, and are binding upon the plaintiffs, and they cannot recover for extra work without

showing a compliance therewith, or that the engineer acted in the premises arbitrarily or dishonestly, or upon a demonstrable mistake of fact. Shaw v. First Baptist Church, 44 Minn. 22, 46 N. W. 146; City of Duluth v. McDonnell, 61 Minn. 288, 63 N. W. 727.

But the mere fact that they did the work as ordered; that the engineer refused to recognize their claim that it was extra, and refused their demand to fix a price for it; and that the evidence is sufficient to justify a finding or verdict that it was extra work, and that the engineer ought to have complied with their demand,—is not sufficient to entitle them to recover. To hold otherwise would be practically to emasculate the provisions, and permit the contractor to appeal in every case from the judgment and decision of the engineer to a jury. On the other hand, such provisions, while valid and necessary to prevent frauds upon the public treasury, must not be used, by arbitrary or dishonest or incompetent engineers, to oppress honest contractors, and to cheat them out of their just dues. Such contractors may show, in justification of a noncompliance with the contract provisions in question, that they did all that they could do to comply therewith, and that the action of the engineer in the premises was arbitrary or fraudulent or dishonest or by reason of a demonstrable mistake of fact. If they are unable to so satisfy the court or jury, they cannot recover for extra work.

Now, the instructions to the jury, complained of, wholly omitted this essential element of the plaintiffs' case, and permitted a recovery by the plaintiffs, in face of the provisions of the contract, if the jury found that a change in the plan of the work was made which in fact involved the doing of extra work, that the plaintiffs did it as directed, and that the engineer refused their demand to fix the price therefor. The instructions were therefore erroneous, and the giving of them reversible error, unless it appears from the undisputed evidence, as a matter of law, that the city engineer acted in the premises arbitrarily or fraudulently, or by reason of a demonstrable mistake of fact. If such be the case, of course, the error was harmless.

Our conclusion, based upon an examination of the entire record, is this: Considering the terms of the written contract and the profile, which was a part of it, and with reference to which the pro-

visions of the contract were adopted, and the undisputed evidence that the bottom of the lake proved to be different from what was represented, and that the sand provided for in the contract proved wholly inadequate to protect the pipes, and that these facts rendered necessary a radical change of plan, we are of the opinion that it conclusively appears that the engineer, in deciding that all of the work declared on in the fourth cause of action was included in the contract, and that none of it was extra work (we have no reference to the price to be allowed therefor), must have acted arbitrarily or upon a demonstrable mistake of fact. This is especially true as to the rock foundation or bed for the pipe. But, as this is not necessarily true as to all the work claimed for in the fourth cause of action, we cannot hold that the instruction of the court complained of was error without prejudice, and for that reason the order must be reversed, and a new trial granted. So ordered.