CITY OF WINONA v. M. S. JACKSON and Others.[1]

July 1, 1904.

Nos. 13,926, 13,927—(106, 107).

**Contract with Municipal Corporation—Liability of Contractor's Surety.**

The city council of the city of Winona caused plans and specifications to be prepared for the construction of a system of sewers, upon which bids were invited for the work. Defendants J. & B. submitted a bid in proper form, which was accepted by the city council. A contract was subsequently entered into by which J. & B. undertook and agreed to do a part of the work in the construction of such sewer, for which the city agreed to pay them a stipulated compensation. The contract provided, among other things, that the contractors should do the work strictly in accordance with the plans and specifications, under the direction of the city engineer, and provide suitable appliances for removing all water which

[1] Reported in 100 N. W. 368.

might accumulate in the sewer trenches, and to keep the same entirely free therefrom during the work of laying the sewer pipe. During the progress of the work large quantities of water were encountered in one of the trenches, to avoid and remove which work and material not particularly specified in the contract or plans and specifications, were rendered necessary; but the water could by practicable means and methods be removed therefrom and the bed of the trench made a suitable foundation for the pipe. The contract also contained a stipulation that if the bottom of the trench was found too soft, and not a suitable foundation, a foundation should be made by the contractors, under the direction of the city engineer, and paid for by the city as extra work. On the claim that the appearance of water in the trenches in question in such quantities as to render necessary, to avoid and remove it, work and material not specified in the contract, entitled the contractors to compensation for extra work, which the city refused to recognize, they abandoned the contract, refused further compliance therewith, and the city completed the portion of the work left undone by them. At the time the contract was entered into the contractors executed and delivered to the city a bond for the faithful performance of the contract, which defendant Fidelity & Deposit Company signed as surety. In this action to recover upon such bond for the default of the contractors, it is *held:*

1. That the contract so entered into was not in excess of the power or authority of the city council, nor a violation of any provision of the city charter prohibiting the council from entering into contracts whereby pecuniary liability against the city is incurred in excess of the limitations therein prescribed.

2. Under the terms and provisions of the contract, plans, and specifications, the contractors were under obligation to provide all appliances for the removal of, and to remove, all water which accumulated in the sewer trenches, and were not entitled to compensation for extra work and material for doing so.

3. The refusal of the city to recognize their claim to extra work and material in the removal of the water did not justify them in abandoning their contract, and they are liable in damages for their failure to perform the same.

4. The reasonable cost and expense necessarily incurred by the city in completing the work after the abandonment thereof by the contractors was the measure of plaintiff's damages, and recovery thereof may be had in this action against the surety.

5. The contract provided that the work should be finished on a date named therein, and, for a failure on the part of the contractors to complete the work within the time so fixed, that they should pay to the city as liquidated damages the sum of $25 per day for each and every day the

work remained unfinished thereafter. The bond contained no provision covering or including such damages, and the defendant surety is not liable.

6. The evidence produced on the trial *held* sufficient to justify the findings of the trial court.

Action in the district court for Winona county to recover from defendants M. S. Jackson and Fred Bokorny, as principals, and Fidelity & Deposit Company of Maryland, as surety, $19,939.90 upon an indemnity bond executed by defendants in connection with a contract entered into by defendants Jackson and Bokorny for constructing a sewer for plaintiff. Defendant Surety Company alone appeared and answered. The case was tried before Snow, J., who made findings of fact, and as conclusions of law found that plaintiff was entitled to recover from defendant Surety Company $11,774.96 and interest, being the cost incurred by plaintiff in completing certain work abandoned by the contractors, but that defendant was not liable for any part of the liquidated damages provided for in the contract in event of delay on the part of the contractors. From a judgment entered pursuant to the findings both plaintiff and defendant company appealed. Affirmed on both appeals.

*W. A. Finkelnburg* and *Brown, Abbott & Somsen,* for plaintiff.

The contract is within the city's charter power. Sp. Laws 1887, c. 5; Laws 1897, c. 37; Brown v. Village of Heron Lake, 67 Minn. 146; Claiborne Co. v. Brooks, 111 U. S. 400; State v. Egan, 64 Minn. 331; Rodgers v. U. S., 185 U. S. 83. Defendant is estopped to assert the defense of ultra vires. Hunt v. Hauser Malting Co., 90 Minn. 282; Seymour v. Chicago Guaranty Fund Soc., 54 Minn. 149; City of Chaska v. Hedman, 53 Minn. 525; City of Fergus Falls v. Fergus Falls Hotel Co., 80 Minn. 165. The contrivances to remove and keep the water from the trench were primarily for drainage purposes, required by and within the specifications. Cowley v. Davidson, 13 Minn. 86 (92); Stees v. Leonard, 20 Minn. 448 (494); Paine v. Sherwood, 21 Minn. 225; Nash v. City of St. Paul, 23 Minn. 132; Anderson v. May, 50 Minn. 280. The contractors were not entitled to extra compensation for appliances and work necessary to form a dry ditch. McCauley v. City, 83 Iowa, 212; Fruin v. Crystal, 89 Mo. 397; Wilkin v. Ellensburgh, 1 Wash. St. 236; Gartner v. City, 131 Mich. 21; Mairs

v. Mayor, 166 N. Y. 618. The actual cost to the city of completing the work is the measure of damages. Friedland v. McNeil, 33 Mich. 40; American Surety Co. v. Woods, 105 Fed. 741; Zimmerman v. Jourgensen, 60 Hun, 578.

The amount stipulated to be paid for delay must be treated as liquidated damages, and not as a penalty, and the city was not put to proof of actual loss. Taylor v. Times Newspaper Co., 83 Minn. 523; Brooks v. City of Wichita, 114 Fed. 297; Sun Printing & Pub. Assn. v. Moore, 183 U. S. 642. The contractors are answerable for liquidated damages, accruing both before and after their abandonment of the work. Watson v. DeWitt, 19 Tex. Civ. App. 150; Nichols v. City, 109 Wis. 643; Lamson v. City (Wis.) 95 N. W. 78. The surety is liable for liquidated damages resulting from the contractors' default. Locke v. McVean, 33 Mich. 473; Smith v. Molleson, 148 N. Y. 241; Mayor v. New York, 82 Hun, 553; Humboldt v. Wennerhold, 81 Cal. 528; Dunlap v. Eden, 15 Ind. App. 575; Watson v. O'Neill, 14 Mont. 197; Kimball v. Baker, 62 Wis. 526; Sather v. Briggs, 138 Cal. 724.

*Webber & Lees,* for defendant.

The contract between the city and the contractors was ultra vires and void. By entering into the contract in question, the city transgressed its organic law. It incurred a liability of over $38,000 to Jackson & Bokorny, together with an additional liability upon other contracts entered into at the same time for the construction of other portions of the sewer system amounting to $36,000, or a total liability of approximately $73,000. It had not the funds, neither had it made any provision to obtain them by taxation, with which to meet these liabilities. The case is not one where a city has merely exceeded its powers; it is one where its officers have violated a positive command of the legislature. They have done a thing which the charter in express terms prohibits. The contract is therefore void. Borough of Henderson v. County of Sibley, 28 Minn. 519; Starkey v. City of Minneapolis, 19 Minn. 166 (203); Bailey v. Austrian, 19 Minn. 465 (535); Tarbox v. Gotzian, 20 Minn. 122 (139); Kiichli v. Minnesota Brush Ele. Co., 58 Minn. 418; Roberts v. City, 10 N. D. 230; City v. Wann, 144 Ind. 175; Niles v. Mayor, 59 Mich. 311; City of Superior v. Norton, 63 Fed. 357; Kansas v. O'Connor, 82 Mo. App. 655; 1 Dillon, Mun. Corp. (4th Ed.) §

131; Fowler v. City, 85 Wis. 411; City of Ottumwa v. City Water Supply Co., 119 Fed. 315; Allen v. City, 107 Iowa, 90. The promise of the city to pay for the work was not enforceable. It was not effective as a contract. The city was not estopped from denying its validity. Newbery v. Fox, 37 Minn. 141; State v. Torinus, 24 Minn. 332; Central Transp. Co. v. Pullmans Palace Car Co., 139 U. S. 59; McCormick v. Market Bank, 165 U. S. 538. It is elementary that if the principal is not bound by a contract, the surety upon his bond for its performance is not bound. The obligation of a surety is strictly accessory to that of a principal. Brandt, Sur. § 121; Eising v. Andrews, 66 Conn. 58; Henline v. Reese, 54 Oh. St. 599; Dole v. Cosmopolitan, 167 Mass. 481; Boone v. Jones, 54 Iowa, 699.

The city impliedly warranted its plans and specifications to be sufficient. Bentley v. State, 73 Wis. 416; MacKnight v. Mayor, 160 N. Y. 72. The original plans and specifications did not permit the use of the crushed-stone system, and that system required extra labor and materials. If the contractors were entitled to treat this work as extra and the city arbitrarily refused to recognize it as such, they had the right to stop work as they did. Gearty v. Mayor, 171 N. Y. 71; Pope v. Porter, 102 N. Y. 366; City of Milwaukee v. Shailer, 84 Fed. 106; Grand Rapids v. Van Dusen, 29 Mich. 431. Defendant had no right to alter the specifications, while plaintiff had an implied right to do so. MacKnight v. Mayor, 160 N. Y. 83.

The refusal of the city council to allow the contractors extra compensation for putting in the crushed-stone foundation was arbitrary. King v. City of Duluth, 78 Minn. 155. The use by the city of the levee system in completing the sewer was a departure from the plans and specifications. If the city in completing the work did anything not required by the specifications or did any portion of the work in a different manner than that prescribed, the cost of the portion of the work so done is not chargeable to the defendant. City of Milwaukee v. Shailer, supra; U. S. v. Maloney, 4 App. D. C. 505; Powers v. City, 114 N. Y. 145; Charlton v. Scoville, 144 N. Y. 691.

The contractors did not abandon the work. They were excluded from it without good cause, for the reason that they refused to go on with it unless the city would recognize the crushed-stone foundation as an extra. Their exclusion was wrongful, if their position was well

taken. There never was an abandonment in any proper sense of the word. Anderson, Law Dict. 2; Smith v. Glover, 50 Minn. 72.

BROWN, J.

The city of Winona entered into a contract with Jackson & Bokorny, by which that firm undertook and agreed to do certain work in constructing a system of sewers for the city, for the stipulated compensation, in round numbers, of $30,000. The larger part of the work undertaken was completed by the contractors, but, for reasons that will be stated more at length later in the opinion, the contractors failed fully to perform their contract. The city completed the work left undone by them, and brought this action, upon the bond given by the contractors to indemnify the city in the event of a breach of the contract on their part, to recover damages for the contractors' default, recovered judgment for the sum of $11,774.96, the reasonable cost and expense incurred by the city in completing the work covered by the contract, and defendant surety company appealed. Defendants Jackson & Bokorny were not served with process in the action, and did not appear, defendant surety company alone defending the action. The case will be best understood by a statement of facts in connection with each proposition discussed and decided, and by proceeding thus many repetitions will be avoided.

1. The first point made by defendant is that the contract between the city and Jackson & Bokorny was void and unenforceable, and all proceedings had thereunder nullities. This contention is based upon the theory that the city council, in entering into the contract, violated certain express provisions of the city charter limiting its authority to incur liabilities against the municipality, and to this feature of the case we first turn our attention.

Section 10 of the charter of Winona (Sp. Laws 1887, p. 267, c. 5), provides that the recorder thereof shall annually present to the city council a written estimate in detail of all sums required to defray the expenses of the city during the next ensuing fiscal year; and the city council is required to act thereon in determining the amount of money necessary to defray such expenses, and in levying taxes sufficient to meet the same. Chapter 6, § 19, expressly provides that:

> The city council, the purchasing committee and all other officers of the city shall in all appropriations, and in all purchases

made or liabilities incurred, payable or involving disbursements from the general fund, take care not to exceed in any fiscal year the several estimates made as in this chapter above provided of probable expenditures from said fund, and no greater aggregate of appropriations shall be made for any department or purpose than the amount of the estimate thereof.

It further provides that funds must be annually provided by taxation to meet all anticipated demands as they arise, and that the annual tax levy for current expenses shall not exceed one per cent. of the assessed valuation of the taxable property in the city. It is contended by defendant that these provisions of the charter expressly prohibit the city council from entering into any contract by which pecuniary liability is incurred where no provision has been previously made for the payment of the same, and that, in entering into the contract here under consideration, the city not only exceeded its powers, but transgressed positive commands of the law. The trial court found in this connection that the city council had made no provision, prior to the date of the contract with Jackson & Bokorny, for raising any sum by general taxation, or otherwise, to meet the expense of the proposed improvement, nor was there at that time in the general or in the local improvement fund money sufficient to pay for more than one-third of the expense thereby incurred. The court also found that the evidence did not disclose how the necessary funds to defray this expense were afterwards in fact acquired, or how the city intended originally to acquire them.

A number of authorities are cited by counsel for defendant, in support of their contention that the contract was void, to the effect that contracts entered into by municipal corporations in excess of their power, or in violation of statutes expressly limiting their authority, are void and absolute nullities. This is an elementary principle of the law, but we are of opinion that it has no application to this case.

Chapter 7 of the city charter authorizes and empowers the city council to provide for and make public improvements of the nature of that contemplated by the contract here in question, and to assess the cost and expense thereof to property benefited thereby. The provisions of this chapter treat fully the subject of such improvements, expressly authorize the city council to provide for them, and detail with par-

ticularity the manner and proceedings to reimburse the city by assessments against the property benefited. Section 1 of that chapter provides that the expense incidental to certain classes of improvements, such as surveying streets, lanes, alleys, sewers, drains, reservoirs, and public grounds, the expense of estimating the amount and cost of work proposed to be done on or about the same, the expense of repairing streets and sidewalks, and of establishing and improving public parks, shall be paid from the general fund in the city treasury, and the city recorder is required to embrace in his annual estimate an amount sufficient to cover all such expenses. Section 2 provides, among other things, that the city council may establish a system of public sewers, and cause sewer pipes to be constructed and laid, and that

> The expense of all material for and of constructing or laying such sewers or sewer pipes, and of such appliances and means as may be necessary to effect or facilitate the discharge of sewerage * * * shall be chargeable to and assessed upon the lots and parcels of land abutting upon streets

in which the sewer may be constructed. This section, unlike section 1 just referred to, confers no authority upon the city council to pay the cost and expense of the construction of sewers out of the general fund, and the recorder is not required to take an expense of that kind into consideration in making the annual estimate required by chapter 6.

The various provisions of chapter 7, in so far as they authorize improvements of the character of that here involved, must be construed independently of the provisions of chapter 6 restricting the council in the matter of incurring liabilities. Otherwise the power conferred by chapter 7 to provide for the construction of sewers cannot be exercised, for the recorder is not required or authorized to include in his annual estimate any such expense. That official is, by section 10, c. 6, required to submit an estimate of the probable expense for certain specified departments and purposes, and the construction of sewers is not included therein; and by section 19, c. 6, the council is forbidden to exceed in any fiscal year the estimate so made. So that, if the provisions of chapter 6, containing limitations on the power of the council to incur debts and liabilities against the city, are construed to cover and include the expense of a sewer, it would practically forbid such improvements.

Such was not the intention of the framers of the charter. The restrictions found in chapter 6 must be held to apply to the ordinary expenses of the city, and not to the power conferred by chapter 7 to provide for the construction of sewers, the cost and expense of which is paid by property owners. The case of Kiichli v. Minnesota Brush Ele. Co., 58 Minn. 418, 59 N. W. 1088, is not in point. The charter of the city of Minneapolis, construed in that case, contained a general provision prohibiting the issuing of bonds or incurring any liability in excess of the revenue actually levied for public purposes. As we construe the charter of Winona, the limitations imposed upon its council in this respect do not extend to improvements of this kind. It is not necessary to inquire how the city council intended to meet this expense in the first instance. The only question here involved is whether it acted illegally in entering into the contract, and what action was intended in respect to meeting the obligations thereby incurred is not relevant to that question.

2. On April 25, 1900, the city council, by resolution duly adopted and approved, provided for the construction of a system of sewers for a portion of the city, and to that end directed the city engineer to prepare plans and specifications for the contemplated improvement, upon which to invite bids for the work. The plans and specifications were accordingly prepared, and were very specific, covering the work in its minutest details; and upon them the city council advertised for bids. Defendants Jackson & Bokorny submitted a bid for a portion of the work designated in the record as "Contract No. 1," embracing the entire pipe system of the sewer, the discharge pipe, and attendant manholes; and their bid was accepted, and the contract awarded to them. A formal written contract was thereupon prepared and executed by the parties, which particularly set forth the obligations of each, and referred to and made a part thereof the plans and specifications made the basis for bids. The contract, as thus completed, required that it should be performed in a workmanlike manner, that the contractors should furnish all labor and material, that the material should be first-class in kind, and the entire work performed under the supervision and direction of the city engineer, and that it should be fully completed not later than December 10, 1900. The compensation of the contractors was fully stated in the written contract, and required the city to pay them

ninety per cent. thereof on the tenth of each month, as the work progressed, upon certificates of the city engineer. It was further provided that the city should not be liable for extra labor or material claimed to have been furnished by the contractors about or in connection with the performance of the work, unless the same was previously expressly authorized by the council. The contractors were required by the terms of the contract to follow strictly and without delay all instructions and orders given by the engineer; and, further, the plans and specifications

> Are to be understood as containing all that is necessary for the thorough and satisfactory completion of the work in a thorough and workmanlike manner, and shall be understood to include all work not specifically mentioned herein but necessarily incident thereto; and the decision of the engineer shall control as to the interpretation of drawings and specifications during the execution of the work.

The specifications further provided—and this is important, as it is mainly relied upon by the city to sustain its recovery—that:

> Proper and suitable appliances shall be provided by the contractor for removing all water which may be found, or which may accumulate in the trenches or other excavations, and he shall form all dams or other work necessary to keep them entirely clear of water while the work is being done. The sewers shall not be used for draining the water unless upon written permission from the engineer for each occasion.

Other provisions are found in the specifications to the effect that, if water accumulated in the trenches, it should be carefully removed by the contractors before laying the sewer pipes.

Subsequent to making the contract, Jackson & Bokorny entered upon the performance of the work, and the same proceeded satisfactorily and without serious difficulty until July 9, when they attempted to lay pipe on Winona street. They then encountered water, which, when the sewer trench was excavated the required depth, rose therein, by percolation through the sides and bottom, to the depth of about twenty inches, and rendered it impossible to lay the pipes on a secure foundation without first removing it. This they sought to do, first by the use of hand pumps, but without any system of drainage, and were un-

successful. They then applied steam pumps, but with no better success. It was found practically impossible to keep the water out of the trench in either manner, and they abandoned the work on that street, in the hope and expectation that later in the year, when the Mississippi river, adjoining which is located the city of Winona, was lower, the water in the trenches would disappear. They completed the work on all other streets, and were paid therefor as provided by the terms of the contract. They resumed work on this street in September, but again encountered the same difficulty from water. The city engineer, under the suggestion of an expert in this sort of work, advised sinking the trench lower than the required depth, placing therein a drain pipe to carry the water to a reservoir, there to be pumped out, covering the drain pipe with crushed rock or stone, and laying upon this a covering of sand, which he thought would make a safe and suitable foundation for the pipe. An attempt was made by the contractors to perform the work in this manner, but the cost and expense so greatly exceeded their calculations that, on the claim that it involved extra work and material, which the city council and city engineer refused to recognize, they wholly abandoned the work. Their claim to compensation for extra labor and material in performing the work in the manner suggested by the engineer was based upon the following provision found in the specifications:

> When the bottom or bed of the trench is too soft, or not a suitable foundation in the opinion of the engineer, a foundation shall be made as directed by him and be paid for at schedule prices or in the manner provided for extra work.

This claim the city council refused to recognize, and after the abandonment of the work by the contractors the city proceeded with its prosecution, and completed it, adopting for a time, in doing so, the suggestions made by the engineer for removing the water from the trench, and for the remainder of the work a new plan for accomplishing the same end, the same being the construction of side drains in the trenches, leaving elevated in the center thereof a foundation for the pipe.

It is contended by defendants that they were justified in abandoning the work after encountering the difficulty with water, and the refusal of the city to recognize their claim to extra work and material. If

their contention in this respect is sound, the judgment appealed from should be reversed. But a careful reading of the entire contract, together with the plans and specifications made a part thereof, and pursuant to which the work was prosecuted, leads to the conclusion that the learned trial court was right in holding that it was incumbent upon the contractors to take care of the water, and that they were not entitled to extra compensation for so doing. The court expressly found that had the water been entirely removed from the trench during the period the contractors were endeavoring to lay the pipe on Winona street, and kept out a sufficient length of time to permit the laying and cementing of the pipe on a dry bed, the natural bottom of the trench would have been a stable and suitable foundation for the pipe; that it was in fact possible and practicable to effect the removal and exclusion of the water without excavating the trench below the grade line; and that the condition of the bottom of the trench, as caused by water, was not covered by that provision of the contract to the effect that, when the bottom or bed of the trench was found too soft for a suitable foundation, a foundation should be made as directed by the engineer, and paid for as extra work. The soil in which the trench was excavated was, after the depth of one or two feet, composed entirely of sand, and furnished, with the water removed, a perfect foundation on which to lay the pipe. The specifications expressly required the contractors to provide suitable appliances for removing the same, and to keep them entirely free from water during the progress of the work, and their obligation to do so is clear. The various provisions of the contract indicate beyond question that the parties contemplated that water would be encountered in digging the trenches for the sewer, and special pains seem to have been taken to impose upon the contractors the duty and obligation of avoiding it when so encountered. The provision that, when the bottom of the trench was too soft and not a suitable foundation, extra compensation should be allowed for labor and material in constructing one, was not intended to refer to the condition of the trench respecting the accumulation of water therein. That provision must, in view of the particularity of the contract respecting the removal of water, be construed to have reference to other conditions rendering the bottom of the trench unstable and insecure. The contract having imposed upon the contractors the duty to remove all

water from the trenches when encountered, and it having been practicable for them to do so, the conclusion is unavoidable that they were not justified in abandoning their contract upon the refusal of the city to recognize their claim for extra work and material therefor.

Counsel for defendant seek to apply to the facts of this case the rule followed in King v. City of Duluth, 78 Minn. 155, 80 N. W. 874, and in Bentley v. State, 73 Wis. 416, 41 N. W. 338. It was held in effect in those cases that, where an employer has plans and specifications prepared by an architect for the construction of a building, and lets a contract for its erection in accordance with such plans, there is an implied undertaking on the part of the employer that they are suitable and adequate for the purpose designed, and if the contractors undertake to erect a building in accordance with them, and by reason of defects or omissions the building falls, the loss falls upon the employer. In King v. City of Duluth, supra, it appeared that the method of laying the water pipe provided by the contract there before the court was so inadequate that a radical change of plan was necessary, and the contractors were held entitled to extra compensation. But the rule there followed has no application to this case, for it is clear that, had the contractors complied with the terms of the plans and specifications, the result would have been precisely what was contemplated by the city, viz., a sewer system in perfect working order. Though the plans did not provide any particular manner for avoiding the water as it accumulated in the trenches, the contractors were required at all events to meet and overcome it, and had they done so—which was practicable, as found by the trial court—a perfect sewer would have resulted. The plans and specifications were not inadequate or insufficient, as in the King case, but, on the contrary, full and complete.

3. The trial court held that plaintiff was entitled to recover the reasonable cost and expense of completing the work, over and above the amount which the contractors were to receive therefor. The conditions of the bond on which this claim is made are as follows: That Jackson & Bokorny shall

> Complete said contract according to the terms thereof and the contract price, and shall also comply with all requirements of

92 M.—30

law, and shall faithfully perform the work specified in said contract in accordance with the plans, specifications and contract therefor, subject to the supervision and approval of the city engineer of said city.

Under this condition of the bond, the contractors, having failed to perform the contract as required by the terms of their agreement, became liable to the city for the damages occasioned by their default, the measure of which was the reasonable cost and expense of completing the work. Paine v. Sherwood, 21 Minn. 225; Carli v. Seymour, Sabin & Co., 26 Minn. 276, 3 N. W. 348; Anderson v. Nordstrom, 60 Minn. 231, 61 N. W. 1132.

Complaint is made by defendant that the evidence tending to prove the damages is insufficient to justify the trial court's findings. An examination of the record does not sustain this contention; upon a full review of the evidence we are satisfied that the damages were sufficiently proven, and the findings of the trial court must be sustained. It was not necessary that the city, in completing the work left undone by the contractors, follow the plans and specifications made a part of defendant's contract. The city had the undoubted right to resort to such methods and means of completing the work as were reasonably necessary, and the fact that it adopted methods for removing the water from the trenches not pointed out or specified by the contract in no way militates against its right to recover, there being no suggestion that such methods were unnecessarily extravagant or unreasonable.

4. Plaintiff also appealed from the judgment, and its appeal presents the bare question whether the city is entitled to recover certain liquidated damages provided for in the contract between it and Jackson & Bokorny. The contract required said defendants to complete the sewer on or before the date specified therein, and provided, for their failure to do so, that they should pay the city as liquidated damages $25 per day for each and every day the work remained uncompleted after the date named. The contention of plaintiff is that this liability of the contractors was included within the terms and conditions of the bond, and that it is entitled to recover the amount thereof against the surety. We do not concur in this contention. It is elementary that a surety is a favorite in the law, and has the right to insist upon the

strict letter of his contract; a claim against him is strictissimi juris. Cushing v. Cable, 48 Minn. 3, 50 N. W. 891; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Brandt, Sur. 79. The bond on which this action was brought contains no condition which may fairly be said to obligate the surety to pay the liquidated damages mentioned. Its conditions, so far as here material, are to the effect that the contractors shall pay, as they become due, all just claims for work and labor performed, and for all material furnished in execution of the contract, and that they will indemnify the city against any damages or loss which may arise, directly or indirectly, from the performance of the work by reason of their negligence or misconduct, or the negligence of their servants or employees, and, further, that they will complete the contract according to its terms, and save the city from any cost, charge, or expense that may accrue or arise from the doing of the work specified in the contract. There is no provision or condition which obligates Jackson & Bokorny or the surety company to pay to the city the liquidated damages referred to, and no liability, so far as the surety is concerned, exists by implication of law.

We have covered all the assignments of error requiring special mention.

Judgment affirmed on both appeals.