## J. G. ROBERTSON v. VILLAGE OF GRAND RAPIDS.[1]

### October 27, 1905.

### Nos. 14,378—(9).

**Conclusive Evidence.**

The certificate of the consulting engineer, who was made final arbiter between the parties in a building contract, is conclusive as to the completion and character of material and labor furnished. The trial court was justified in holding that the plant was substantially completed in accordance with the certificate of the engineer.

**Stipulated Damages.**

. A certain provision for stipulated damages in case of delay examined, and *held*, that it was too indefinite and uncertain, and, further, that no specific amount was stated upon which the percentage of deduction might be computed.

Action in the district court for Itasca county to recover a balance of $2,400 claimed.to be due upon a contract for the installation of an electric light plant in defendant village. The case was tried before McClenahan, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Welch, Hayne & Hubachek, Frank F. Price* and *Charles W. Somerby,* for appellant.

*Durment & Moore* and *C. C. McCarthy,* for respondent.

LEWIS, J.

June 14, 1902, defendant advertised for bids for an electric light plant, calling for sealed proposals, according to specifications and plans to be furnished by defendant. The instructions accompanying the plans and specifications stated that all proposals must be carefully and completely made on the printed forms annexed, and would be received for the following work: Building, machinery, and electric lines, and for one or more of such parts, preference to be given those for the entire work. The specifications provided that Edward P. Burch, of Minneapolis, was the consulting engineer, and that, should any discrepancy appear

[1] Reported in 104 N. W. 715.

or any misunderstanding arise as to the import of anything contained in the plans and specifications, the decision of the engineer should be final and binding upon the contractor; that the engineer might make any reasonable alterations in the line, grade, form, position, dimensions, or material of the work, either before or after its commencement, provided such reasonable alterations did not materially increase or diminish the quantity of the work to be done. It was further provided that, in order to prevent disputes and litigation, the engineer should be referee in all cases to determine the amount or quantity, all questions with reference to the completion of the work, and that his decision should be final and conclusive. It was further provided that, when the work was completed to the satisfaction of the engineer, he should report the same to the council, whereupon the defendant within thirty days thereafter should pay to the contractor the whole amount of money accruing to him, except such portions thereof as might be lawfully retained by it.

With the exception of certain general provisions, applicable to all, the specifications were divided into three separate parts, in accordance with the original advertisement and instructions, viz., building, machinery, and electric lines, and each part was treated independently, and so drawn that there might be three independent bids and contractors. The time fixed for the completion of the building was October 31; for the electric lines, November 30; and for the machinery, December 31, 1902.

Upon one of the blank forms furnished by defendant the plaintiff formulated his proposal, bearing date July 8, 1902. The printed form was so drawn as to permit of the submission of a bid for either the building, machinery, or electric lines, or for the entire construction; four separate headings being provided for that purpose. In the proposal submitted by plaintiff the form was changed so that the proposal read:

> For machinery and electric lines, twenty-four thousand five hundred, $24,500.

The printed form also contained an agreement to enter into a contract within thirty days after receipt of notice of the acceptance of the bid and an agreement with reference to stipulated damages, which will be referred to later.

The proposal having been accepted, the parties entered into a formal contract, dated July 8, 1902, in which it was agreed by plaintiff that in consideration of the sum of $24,500 he would furnish and deliver, according to plans and specifications, all the material, machinery, and labor mentioned and described in his proposal thereto attached and made a part of the contract, and to erect, construct, establish, and turn over, after full test thereof, a complete electric lighting plant, as aforesaid, within the time in said plans and specifications mentioned; and among other things it was stated that it was the intention of the parties to accept, ratify, perform, and be bound by all the provisions of the said plans, specifications, advertisement, instructions, proposal, and all documents relating thereto and attached. The building was erected by another party, under separate contract, and plaintiff proceeded to furnish the machinery and electric lines.

The work progressed during the fall and winter of 1902. Payments were made, from time to time, upon the certification of the consulting engineer, based upon the percentage of work done and material furnished, and on March 2, 1903, the engineer directed a communication in writing to the village council, in which he declared that the specifications for the machinery and electric lines were more than fulfilled by plaintiff, that the work and material furnished had been more than required by the specifications, that the tests of the machinery had been according to contract, and that the work had been completed to his satisfaction, and directing the village to pay the contractor within thirty days the whole amount of money due, except such portions as might lawfully be retained, and also certifying that at the time the sum of $800 was due on the contract.

This action was brought to recover the sum of $2,400, conceded to be the balance of the contract price still unpaid. The defense consists of a denial that the contract was completed. A counterclaim was interposed upon the theory that the village was entitled to the amount of stipulated damages referred to in the proposal for at least the time elapsing from December 31, 1902, until March 2, 1903, and other counterclaims for damages growing out of the failure of respondent to furnish proper material and workmanship. At the close of the case the trial court directed a verdict for plaintiff for the entire amount, thus withdrawing from the jury consideration of all of the counterclaims.

1. In the absence of any evidence to indicate that the engineer was acting in bad faith or according to demonstrable mistake of facts, his certificate to the effect that the contract had been completed according to the plans and specifications was final. The work was required to be done to the entire satisfaction of the engineer, who was given authority to make reasonable alterations, and the stipulations to the effect that he should be the referee in all cases, in order to prevent disputes and litigation, did not limit his authority to the settlement of actual disputes. There is no evidence to indicate that any objections were made to the materials, the work, or the conduct of the engineer until after the contract had been substantially completed and a new village council had been elected. The repainting of the poles was properly treated as a defect arising after the acceptance of the plant by the engineer, and the defect was remedied, as required, by appropriate provisions in the specifications. This disposes of all such counterclaims, and, although the evidence with respect to these items is very long, we fail to discover that there was any fraudulent intent to evade the terms of the contract, or that the engineer was demonstrably acting under a misapprehension as to the facts.

With reference to the filter, upon which so much stress was laid at the argument, it is very clear that neither within the letter nor spirit of the specifications and contract was plaintiff required to furnish such an article. The provision was that the contractor was to provide piping for the condenser, as specified, the discharge from the condenser to run to a suitable point outside of the building thirty-five feet from the same to a filter. In the absence of specifications as to the character of the filter, it must be taken for granted that defendant expected to furnish it, if such connection should be insisted upon. As to the effect of the engineer's certificate, see St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222, 44 N. W. 1; King v. City of Duluth, 78 Minn. 155, 80 N. W. 874.

2. It is further agreed that if I shall fail to deliver all materials, or to perform any or all of the service contracted for in accordance with the conditions and requirements of the contract, the village council shall make deductions as follows from the contract price for all materials not delivered or services not rendered by the last day of the time fixed for the completion of

the work: For the building, at the rate of two-tenths of one per cent. of the contract price for each day's delay until the same shall have been completed and accepted.  For the machinery, at the rate of one-tenth of one per cent. of the contract price for each day's delay until the same shall have been completed and accepted.  For the electric lines at the rate of one-tenth of one per cent. of the contract price for each day's delay until the same shall have been completed and accepted.  In case the deduction to be made hereunder should equal six per cent. of the amount of the contract, the contract may at the option of the village council be canceled; provided, that delays by an injunction, or by strikes, riot, fire, or other disaster, may in the discretion of the council be accepted in writing as sufficient for waiving such deductions or cancellation.  The said deductions are agreed upon as the liquidated damages that the village of Grand Rapids, Minnesota, will suffer by reason of such default, and not by way of penalty.

We are asked by defendant to hold that because plaintiff, in the subsidiary contract, agreed to turn over a completed electric light plant on December 31, 1902, it amounted to a waiver of the time fixed for completing the electric lines by November 30, and the stipulated damages for one-tenth of one per cent. upon the entire cost, $24,500, for each day's delay, took effect December 31.  On the other hand, it is submitted by plaintiff that when the several documents—advertisement, instructions, specifications, proposal, and subsidiary agreement—are considered together, such conclusion is not warranted.

It is evident that the stipulated damage provision was put in the printed form of the proposal, in order that it might be made to apply, by slight changes, to separate and independent contracts for the building, machinery, and electric lines.  The specifications having provided that the building should be completed October 31, the electric lines November 30, and the machinery December 31, 1902, the rate of two-tenths of one per cent. deduction for each day's delay in constructing the building, and one-tenth of one per cent. deduction for each day of delay in completing the electric lines and machinery, each, was inserted upon the theory that a definite contract price would be fixed

for each of such divisions of work. Had the bidder stated the amount of the cost of the machinery and the electric lines separately, there would be a basis upon which to estimate the rate of one-tenth of one per cent. for each day's delay in completion, in each case. But plaintiff chose to submit a proposition to construct the machinery and electric lines for the total sum of $24,500, and made no change in the provisions concerning stipulated damages to make it applicable. Defendant accepted the bid, entered into a contract, and did not require any change to be made in the agreement as to damages. The problem before the court, therefore, is to determine what was the intention of the parties, and this is to be gathered from the various writings and the printed blanks which, taken together, form the contract.

If the total amount of the bid had been inserted and made applicable to the stipulation for damages, we will concede that the stipulation could be enforced. The actual damages resulting from the delay were not easy of determination, and it was a proper case for the application of such an agreement. And, again, the amount of one-tenth of one per cent. of the entire bid, $24, for each day of delay, was not excessive, and therefore, if the language employed by the parties warrants the conclusion that they intended the stipulation to apply, there appears to be no reason why it should not be enforced as stipulated damages, within the principles illustrated by several decisions of this court. Carter v. Strom, 41 Minn. 522, 43 N. W. 394; Taylor v. Times Newspaper Co., 83 Minn. 523, 86 N. W. 760; Womack v. Coleman, 89 Minn. 17, 93 N. W. 663. It has frequently been held that, where the amount stipulated in this class of agreements is to be paid absolutely upon the failure to perform a certain act, the sum stipulated will be construed to be in the nature of a penalty rather than stipulated damages; for instance, Willson v. Mayor, 83 Md. 203, 34 Atl. 774; 5 Am. & Eng. Enc. (1st Ed.) 27.

If the provision for stipulated damages is indefinite or doubtful, it should not be enforced. Courts are not inclined to enforce penalties and forfeitures, unless such intention clearly appears from the contract. In failing to specifically provide that one-tenth of one per cent. for each day of delay should take effect from the date of completing the entire plant, December 31, it may be inferred that it was the intention of the parties to eliminate from the contract entirely all application of the

provision for stipulated damages. We are inclined to the view that the minds of the parties did not meet; the intention not being expressed to apply the payment of one-tenth of one per cent. of the entire amount of the contract price for each day of delay after December 31.

The agreement as to stipulated damages is rendered uncertain and indefinite for another reason.

> It is further agreed that if I shall fail to deliver all materials or to perform any or all of the services contracted for, in accordance with the conditions and requirements of the contract, the village council shall make deductions as follows from the contract price *for all materials not delivered or services not rendered by the last day of the time fixed for the completion of the work.*

If the words italicized had been omitted, it would be clear that the stipulated amount was to be deducted from the contract price for each day of delay; but such deduction is for all materials not delivered or services not rendered by the last day, etc. If this means that the deduction of one-tenth of one per cent. is to be based upon the value of the materials and work not delivered and rendered by the last day of the time fixed for completion, then the amount is uncertain and indefinite, and there is no proper basis upon which the percentage may be computed. If by that language it was the intention to provide that the deduction of one-tenth of one per cent. was to be made in lieu of all materials not delivered or services not rendered, then a question would arise whether or not, under the other terms of the contract, the contractor could be compelled to complete his contract if he chose to pay the penalty rather than furnish the materials and labor so delayed. The clause is so uncertain as to make it doubtful in what way the percentage is to be computed. For all these reasons the court was justified in holding that the provision referred to did not constitute an agreement to pay stipulated damages.

Order affirmed.