# MEL BLIED v. GEORGE F. BARNARD.[1]

January 31, 1913.

Nos. 17,952—(215).

**Performance of contract.**

Plaintiff sold to defendant a stock of goods in exchange for land conveyed by defendant to plaintiff. The title to the land not being perfect, defendant gave to plaintiff a bond conditioned to perfect the title within 30 days, or, if he failed to do so, to furnish a "good and sufficient bond" conditioned to perfect said title within one year from January 15, 1910; "said bond to be subject to the approval" of plaintiff and "satisfactory to him." Defendant did not perfect the title within the 30 days, but within that time tendered to plaintiff a bond conditioned to perfect the title within one year, which bond plaintiff refused to accept, and brought this action to recover the stock of goods under a chattel mortgage given thereon by defendant to secure the performance of the first bond. It is *held*, under the conditions of the first bond, defendant was obliged to perfect the title to the land within 30 days, or furnish the second bond, and that he actually perfected the title after the 30 days, but within one year, and prior to the trial, would not discharge the chattel mortgage, unless the second bond was given.

**Same — time of essence of contract.**

Time was of the essence of defendant's agreement to perfect title within 30 days.

**Question for jury — error to submit another question.**

The evidence conclusively showed that the second bond was a good and sufficient bond, but it was a question for the jury whether plaintiff was justified in refusing to accept it. It was error to submit to the jury the question whether the bond was in fact good and sufficient, and the answer of the jury that it was not is not sustained by the evidence. The special finding that plaintiff was justified in refusing the bond, being probably based on the erroneous finding that the bond was not in fact good, the errors are prejudicial.

**Statute inapplicable.**

R. L. 1905, §§ 4523, 4524, prescribing the requirements of official bonds as to the number of sureties and their justification, have no application to bonds other than statutory official bonds.

[1] Reported in 139 N. W. 714.

After the former appeal, reported in 116 Minn. 307, 133 N. W. 795, a new trial was had before Childress, J., and a jury which returned a verdict that plaintiff was the owner and entitled to the return of the property described in the complaint, or to the sum of $1,050, and answered the special questions submitted to them as stated in the first paragraph of the opinion. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed and new trial granted.

*J. A. & A. W. Sawyer,* for appellant.

*Larrabee & Davies* and *Paul J. Thompson,* for respondent.

BUNN, J.

After the decision in this case on the former appeal, reported in 116 Minn. 307, 133 N. W. 795, the new trial ordered was had. The trial court submitted the issues to the jury, and a verdict was rendered that plaintiff was the owner and entitled to the return of the property described in the complaint, or, "in case such return cannot be had, is entitled to the sum of $1,050." The jury also returned answers to two special questions submitted to them, finding that: (1) The bond tendered by defendant to plaintiff February 12, 1910, was not "a good and sufficient bond;" and (2) plaintiff was justified in refusing to accept it. Defendant moved for judgment notwithstanding the verdict or for a new trial. The motion for judgment was denied, and the motion for a new trial denied upon condition that plaintiff consent to a reduction of the verdict to $452.18. Defendant appealed from this order.

The facts were stated in the decision on the former appeal, and need not be restated here. Defendant urges several grounds for a reversal of the order.

1. Defendant perfected the title to the Oregon land, for which plaintiff traded his stock of goods, in March, 1910, nearly a year before the first trial, and defendant's first point is that thereby the chattel mortgage, upon which plaintiff's right to recover the stock of goods depends, was discharged. But this was a month after the expiration of the 30 days' time given by the terms of the first bond. This bond provided that, in case defendant failed to perfect title in

30 days from January 15, 1910, he might furnish "a good and sufficient bond" conditioned to perfect such title within one year, "said bond to be subject to the approval of Mel Blied and satisfactory to him." We certainly did not intend to hold or intimate in the former opinion that, if defendant had perfected title before the trial, the rights of plaintiff under the chattel mortgage were lost, irrespective of the question of whether defendant furnished a good and sufficient bond to perfect such title within one year. It is clear from the terms of the first bond that, if title was not perfected in 30 days, the second bond must be given, and that, unless so given, plaintiff would have the right to foreclose the chattel mortgage. It follows that defendant was not entitled to prevail on the ground alone that he in fact perfected the title.

2. The second contention of defendant is that time was not of the essence of the contract by which defendant agreed to perfect title in 30 days, and that, having perfected title within a reasonable time thereafter, the chattel mortgage was discharged. We cannot sustain this contention. While there is no express language making time of the essence, it is apparent from the language of the first bond, and from the subject-matter of the deal between the parties, that it was the intention to require defendant to give a good title, in exchange for the stock of goods, in 30 days, or to give another bond. Defendant could relieve himself from the default by giving the second bond, and it would be adding a term to the contract to hold that he need not give this bond, if he perfected his title within a reasonable time after the 30 days. It is apparent that defendant understood that it was necessary to perfect title in 30 days or give a second bond, as he did give the bond.

3. There was really but one question to be submitted to the jury: Was plaintiff justified in refusing to accept the bond? Of course, if it was not a good and sufficient bond, he was clearly justified in refusing it, and even if it was in fact good and sufficient, yet if plaintiff had reasonable grounds for believing it might for any reason prove insufficient as security to him, he was justified in refusing to accept it. We are obliged to hold that the evidence is conclusive that the bond was in fact "good and sufficient." The surety, Emily

J. Barnard, owned unincumbered real estate in Minnesota of the value of at least $7,500. That she was the only surety, or that she was related to the principals of the bond, in no way affected the validity of the instrument or its character as a legally "good and sufficient" obligation. But under the agreement that the bond should be "subject to the approval of Mel Blied and satisfactory to him," the facts above referred to might be good reason for refusing the bond, if they furnished plaintiff reasonable grounds for believing that it might prove to be inadequate security.

We held on the former appeal that plaintiff was not entitled to refuse the bond without cause or arbitrarily, and that such refusal must be in good faith and upon some ground other than mere sentiment or suspicion. Under this holding, we think the evidence made a case for the jury on the question whether plaintiff was justified in refusing the bond. The fact that the single surety was defendant's mother, and the evidence tending to show some effort on the part of plaintiff and his attorneys to ascertain the financial responsibility of the surety, prevent our saying as a matter of law that plaintiff acted without cause, arbitrarily or in bad faith. This question was for the jury. And if the court had submitted this question alone to the jury, instructing them that the bond was in fact "good and sufficient," or if the jury had found the bond to be good and sufficient, we think the evidence was sufficient to sustain a verdict that plaintiff was justified in refusing to accept the bond.

But clearly the evidence is not conclusive that he was so justified. And it is, of course, evident that the answer of the jury to the second question was the only answer possible, after they had found that the bond was not good and sufficient. We therefore are unable to draw the conclusion that the answer that plaintiff was justified in refusing the bond was based upon any ground other than the false one of its insufficiency in fact. We cannot know what the decision of the jury would have been, if the first question had been answered as we hold it should have been. Therefore the errors in submitting and answering the question as to the sufficiency of the bond were prejudicial, and entitle defendant to a new trial.

4. On another trial, unless the evidence is different, the sole ques-

tion should be: "Was plaintiff justified in refusing to accept the bond?" If he was, then we think it clear that he was entitled to recover in this action the possession of the goods and the value of those retained by defendant. If he was not justified in refusing the bond, then the giving of it and the subsequent performance of its condition by perfecting the title discharged the chattel mortgage, and defendant would be entitled to recover the value of the goods taken by plaintiff on the writ of replevin. Unless there be further evidence tending to show that the bond was not in fact "good and sufficient," it should be so held as a matter of law, and the question whether plaintiff was justified in refusing it should be submitted to the jury under proper instructions.

In this connection we are clear that the statute prescribing the requirements of "official" bonds has nothing to do with the case. This was not an "official" bond, or one required by statute. It was not necessary to its sufficiency that there be more than one surety, or that the sureties justify in double the amount of the bond. The trial court should not have referred to this statute in his charge.

We may say, also, that the question whether plaintiff had "reasonable grounds to believe himself insecure" was correctly held not to be an issue in the case. The chattel mortgage was due if plaintiff's refusal to accept the bond was justified. If such refusal was not justified, the title having been in fact perfected within the time named, the mortgage was discharged.

It is not clear who has the title to the Oregon land. Plaintiff has it under the deed from defendant, unless his title has been lost by the foreclosure of the mortgage on the land. If he still has the title, or a right of redemption, the court should require a conveyance by him to defendant as a condition precedent to a recovery in this action.

Order reversed, and new trial granted.