## JOHN HANEY v. C. F. FERCH AND OTHERS.[1]

### November 25, 1921.

### No. 22,355.

**Drain — action against subcontractor for breach of contract — verdict.**

Plaintiff, to whom a county had let the construction of a ditch, sublet a part thereof to defendants under a contract in which they agreed to give a bond to secure performance. A bond was subsequently given running to plaintiff and the county. In this action to recover the cost to plaintiff of completing that part of the contract which defendants failed to complete, it is held:

(1) The ditch having been completed by plaintiff as per his contract with the county, the county was not a necessary party to this action on the subcontract and bond.

(2) Evidence of what it cost plaintiff to complete the ditch was properly received, the measure of the recovery being the reasonable cost of doing what defendants left undone.

(3) The evidence sustained the finding of the jury that plaintiff did not wrongfully interfere with defendant's work.

(4) There was no error in excluding a document intended for a contract between the parties, but which had never been executed by plaintiff,

[1]Reported in 185 N. W. 397.

particularly since the answer did not plead such document as having been made. The recital in the bond, that it was to secure a contract of even date, becomes immaterial, because of the admission of the answer that the parties operated under the contract attached to the complaint, until an alleged verbal agreement was made more than a year after the execution of the bond.

(5) The motion as well as the appeal being joint, the surety cannot take an advantage of the recitals in the bond, since the other defendants are, in any event, liable, under the finding of the jury, on the contract attached to the complaint.

(6) The defendants were not entitled to a directed verdict.

(7) Statements by an attorney borne out by the record cannot be considered prejudicial.

(8) The amount of the verdict is sustained by the evidence.

Action in the district court for Big Stone county to recover $16,000 for breach of contract. The substance of the answer will be found in the second paragraph of the opinion. The case was tried before Flaherty, J., and a jury which returned a verdict for $6,000. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*A. W. Ewing, A. B. Kaercher* and *K. T. Dahlen,* for appellants.
*Cliff & Purcell,* for respondent.

HOLT, J.

In February, 1915, the county of Lac qui Parle let to plaintiff the construction of county ditch 41, to be completed before October 15 of that year. Plaintiff moved a dredge to the place, but did not start the work. In August he sublet the excavation part to defendants, retaining the cement work for the bridges and dams. At that time, the time for completion was extended by the auditor to July 1, 1916. Defendants, with a "dry land digger," excavated about 4,000 feet of the ditch before freezing put a stop to the work. In the spring and early summer of 1916, floods in the valley of the Minnesota river, the location of the ditch, made it impossible to prosecute the work to advantage, and on July 31, 1916, the auditor undertook to again extend the time of completion, the time named being January 1, 1917. Defendants excavated

for a distance of 600 feet before it froze up in the fall of 1916. The petitioners for the ditch and the county board were dissatisfied with the progress made, and one Gunyon was induced to undertake part of the work, plaintiff letting him use his floating dredge and defendants directing the county to pay Gunyon a certain amount for the yardage excavated by him. Gunyon, however, abandoned the work in August, 1917. Then defendants and also plaintiff did some. In the spring of 1918, floods again interrupted, but some work was done by both parties. Defendants quit the dredging in July of that year. The ditch was finished by plaintiff in 1919 to the satisfaction of the engineer, but it was not accepted by the county board until in April, 1920, after this suit was brought.

Plaintiff sues defendants for breach of the contract and bond given to secure its performance, claiming damages in the sum of $16,000, the alleged cost of completing the work that defendants failed to do. The demurrer to the complaint being overruled, defendants answered, alleging wrongful interference by plaintiff in damming the river and entering upon the work himself without right, and also set up an alleged agreement, under which it was claimed that each party was to hasten the completion of the enterprise, and receive a pro rata share out of the sum the county was to pay for excavating the ditch. The jury returned a verdict of $6,000 for plaintiff. He had previously received some $2,-600 for excavating. Defendants appeal from the order denying their motion in the alternative for judgment or a new trial.

It is contended that the demurrer to the complaint should have been sustained on the ground that the county was a necessary party. The argument is that the bond given by defendants to secure the performance of their subcontract runs to the county as well as to plaintiff. But, even so, it appears that the work was completed, hence the county has no claim under the bond, and it does not appear that any one else, other than plaintiff, has. The county is not concerned in the dispute between plaintiff and defendants. Under the written order executed by plaintiff, the county is required to pay the money to become due for excavating to defendants. Defendants also in their answer averred the county to be a necessary party, and asked for a dismissal, because it had not been

made such. But at the trial it appeared that the county had formally accepted the ditch. That being so, and there being no intimation of any claim in favor of the county on account of the subcontractor's bond, we think the county cannot be a necessary party to this action.

Evidence of the cost to plaintiff of the different items going into the work he did, was received over defendant's objection. The ruling was right.

Plaintiff proceeded on the theory that he was bound under his contract with the county to step in and do the work, when it was apparent that defendants neglected to do it seasonably and properly. If he was right in this, and the jury so found, then defendants are chargeable with the reasonable cost of the part left undone by them and finished by plaintiff. Had the cost been less than the reasonable value, defendants would have been entitled to the benefit. In other words, plaintiff could not recover the reasonable value if it actually cost him less. Of course, it is also true that the cost to him does not necessarily measure the damages recoverable, for plaintiff could not incur needless expense. He was bound to use proper means and methods to do it efficiently and economically, but if he so did, the reasonable cost would be his damages. Ordinarily, the reasonable cost would be the reasonable value. Plaintiff also undertook to prove that the reasonable value was what it cost him to complete the job. Whether plaintiff used efficient means and methods in the work was for the jury. The law is well settled, that a person who abandons the work he has contracted to do, before it is completed, must pay the other party to the contract the reasonable cost of finishing it according to the agreement. Paine v. Sherwood, 21 Minn. 225; City of Winona v. Jackson, 92 Minn. 453, 100 N. W. 368. It was, perhaps, not necessary for plaintiff to produce evidence of the reasonable value of his work, but it was not improper, for, evidently, defendants were claiming the expense or cost incurred by plaintiff to be unreasonably high.

Complaint is also made of the admission of testimony that plaintiff had made unsuccessful efforts to get others to do the work. This evidence may not have much bearing, but it, as well as the testimony of the engineer as to the reasonable value of doing the work at the time it

was done, tended to furnish a reason why the cost to plaintiff came so high compared with the price at which the excavation was let to defendants in 1915. It was also proper to prove by the engineer, who showed himself competent to testify on the subject, to what extent the cost or reasonable value of ditching increased during the time the work was in progress.

A contention is made that plaintiff wrongfully moved his dredge on the job and began work in the fall of 1916, because there had been an extension of time granted defendants until January, 1917. But the answer is that the auditor had no authority to grant the extension. At least, no provision of law has been referred to under which the auditor is given this power, and we have found none. The petitioners and engineer could therefore ignore the extension and insist, as was done, that plaintiff take steps to finish the job. There clearly was default when plaintiff took hold in 1916. The bond sued on, given to secure the subcontract to defendants, so recites.

Four assignments of error relate to an effort to introduce a document, Exhibit 7, not signed by plaintiff, as the one substituted for the contract made the foundation of the suit, attached to the complaint as Exhibit A, and being the contract executed when the excavating was sublet to defendants in 1915. This contract provided for the giving of a bond by defendants in the sum of $7,500. Such a bond was executed March 6, 1916. However, in the bond, also attached to the complaint as Exhibit B, it is recited that a new contract had been entered between the parties as of that date. There was no proof or offer of proof of any contract of that date other than the said document, Exhibit 7, not signed by plaintiff. Plaintiff was designated as one of the parties to it. It surely cannot be held his contract until signed by him. The defendant, Mrs. Ferch, the surety in the bond could, perhaps, have escaped liability on the bond, but for the fact that she joined in the answer wherein the execution of the bond and the contract A is admitted, and it is alleged that the work proceeded under the latter until the spring of 1917, when an agreement was made between the parties modifying contract A, under the terms of which both parties should take hold of and finish the work, and prorate the price the county was to pay under its

contract with plaintiff for the excavating. The motion for judgment or a new trial, as well as the appeal from the order denying it, is joint and not several. It is plain that Mrs. Ferch cannot gain any advantage by this appeal, unless the other defendants are also entitled thereto. We think they are not, for, as far as the pleadings and proof went, the only contract, other than Exhibit A, which they could claim a defense under, was the one of the spring of 1917. And whether this was made was submitted to the jury and determined against defendants upon conflicting testimony. The defendants, other than Mrs. Ferch, were bound by their contract, Exhibit A, even though the obligations of the bond did not become effective.

We do not think defendants were entitled to a directed verdict or judgment notwithstanding the verdict, for, as already indicated, on the main defense of a substituted agreement in the spring of 1917, plaintiff vigorously denied the making thereof, and, on the other, that plaintiff entered the work defendants were to do before they were in default and impeded them by damming the river, we think it is even more clear that there were disputed facts to be determined by the jury. There was from the start almost continuous dickering between the parties, both realizing that the momentous and unexpected events that followed the making of the contract in 1915 so upset the industrial and labor situation that the ditch could not be dug except at a great loss. No doubt, each side was attempting to place as much as possible thereof upon the shoulders of the other. But we do not think the record justifies a charge that either side attempted to oppress the other with unnecessary expense or loss.

No prejudice could result from the argument of plaintiff's attorney that the money in the hands of the county belonged to defendants, for the record shows it to be a fact. When the excavating was sublet to defendants, plaintiff in writing directed the county to pay them the money to become due for the yardage excavated. And, on the argument in this court, plaintiff's attorney admitted that the sum now remaining unpaid upon this ditching contract in the hands of the county belongs to defendants.

The amount of the verdict is challenged as excessive. Plaintiff's

testimony would have justified a larger amount. So that it is impossible for this court to say that there is not evidence warranting the sum awarded. The court, as well as the jury, must have hesitated long before placing any unnecessary cost upon defendants. All must have realized that they became victims of untoward circumstances. The recurring floods and the war, with the accompanying scarcity of labor and high prices, more than doubled the cost of the work. Under those conditions the jury must have been inclined to scrutinize plaintiff's evidence as to cost with care. That this was done is evidenced by the fact that the amounts testified to by plaintiff were very substantially cut down, without any evidence from defendants upon the subject of cost or reasonable value of the work performed by plaintiff, except that of one engineer giving what he considered fair prices at which the construction of this ditch could have been let during the several years here involved. It is apparent that this engineer's estimate was upon the whole job. Here defendants undertook to do it by a plan that was contended to be unworkable upon ground such as that through which the ditch went. A large part of the work done by defendants was not in accordance with the plans and specifications. This necessitated going in again with the dredge and providing water to float it by damming the Minnesota river, in order to excavate a small yardage. Because of the piecemeal way in which the construction was left by defendants, the finishing became exceedingly expensive.

We are unable to discover any error which would justify us in setting aside the verdict, approved as it is by the trial court.

Order affirmed.