## COUNTY OF BLUE EARTH AND ANOTHER v. NATIONAL SURETY COMPANY.[1]

October 9, 1925.

No. 24,614.

**Exclusion of evidence of superintending engineer of judicial ditch prejudicial error.**

1. A civil engineer in charge of drainage construction should be allowed to state whether tile was laid at the depth shown by the original plans and profiles, although he has no present recollection of the levels at any particular station. The loss of the book containing notes he made when the tile was laid might affect the weight of his testimony, but not its admissibility. The modern doctrine favors liberality in the admission of evidence. The exclusion of the evidence referred to was prejudicial error.

**Proof of performance of contract required of contractor under drainage statutes.**

2. Under the drainage statutes, a contractor is bound to do the work in accordance with the plans and specifications. A mere showing that, in good faith, he followed the directions of the engineer in charge of construction falls short of establishing performance of the contract.

**County not estopped by engineer's certificates from recovering cost of remedying defects.**

3. Payments made by the contractor to a subcontractor, in reliance on certificates issued by the engineer, do not estop the county from recovering the cost of remedying defects in the subcontractor's work.

**Change of plan during progress of work permissible by statute.**

4. A change in the plan of construction duly authorized by the court during the progress of the work, which added 10 per cent to the contract price, was permissible under section 6678, G. S. 1923, although the contract limited such increase to 2 per cent.

**By its conduct surety waived notice of application for change in plan.**

5. Changes in the plan of construction were provided for by the

[1]Reported in 205 N. W. 277.

contract. After the change was made and the contractors had partially performed their contract, the surety took charge of the work and undertook to complete it. It thereby waived notice of the application for the change.

1. See Evidence, 22 C. J. p. 654, § 748.
2. See Drains, 19 C. J. p. 692, § 180.
3. See Estoppel, 31 C. J. p. 1193, § 193.
4. See Drains, 19 C. J. p. 692, § 181 (Anno).
5. See Drains, 19 C. J. p. 692, § 181 (Anno).

Action in the district court for Watonwan county upon a drainage contractor's bond. The case was tried before Comstock, J., and a jury which returned a verdict in favor of plaintiffs. Defendant appealed from an order denying its motion for a new trial. Reversed.

*Horace W. Roberts*, for appellant.

*C. E. Phillips, E. C. Farmer, J. L. Lobben* and *Frank E. Morse*, for respondents.

LEES, C.

Judicial Ditch No. 7 in Watonwan and Blue Earth counties was established by the order of the district court in April, 1913. The two counties entered into a construction contract, under which work commenced in May, 1914, and continued intermittently until the contractors ceased work in 1909. Thereupon appellant, as surety on their bond, was called on to complete the work, employed one of the contractors for that purpose, and drew upon the retained percentage of the contract price to pay him.

The drainage was unsatisfactory and, in July, 1922, appellant was notified that the work had not been done properly and that bids would be received for the completion thereof. The lowest bid exceeded the amount of the benefits as determined by the viewers, and all bids wre rejected. In March, 1923, this action was brought on the bond to recover damages for breach of contract. Respondents recovered a verdict of $21,531.83, and this appeal is from an order denying a motion for a new trial.

1. Many assignments of error are based on rulings excluding evidence which appellant attempted to introduce in the examination of L. E. Lambert, the civil engineer in charge of construction from May, 1914, to October, 1918.

The original survey was the work of W. F. Brooks, an engineer appointed by the court when the drainage proceeding was commenced. His plans and specifications were made part of the contract and the contractors agreed to do the work in accordance therewith.

Respondents' principal witness was an engineer named Meyer, who was appointed by the court, after the work ceased, to inspect the work and report his findings. He made a comprehensive report of the defects he discovered and testified at great length concerning the particulars in which the work failed to conform to the plans and specifications. Lambert was called to rebut the conclusions which would necessarily be drawn from Meyer's testimony. While the work was in progress, Lambert had Brooks' field notes, plans, specifications and profiles, and they were before him when he testified. It appeared that he had laid out the work on the ground by taking levels and setting grade stakes; that much of the construction work was done under his direct supervision and the remainder under the supervision of inspectors he employed; that, as the work progressed, he inspected the tile as it was laid and, from time to time, issued certificates to the contractors or their subcontractors; that he had kept a record of his survey and had deposited the book in the office of the clerk of court, but at the time of the trial the book could not be found.

Lambert was repeatedly asked whether the tile was laid at the elevation shown by Brooks' profiles, whether the elevations shown by the grade stakes he (Lambert) set were the same as those shown by the profiles, and whether the pipe was laid at the depth marked on the grade stakes and prescribed by the original plans and profiles. To all such questions objection was interposed on the ground that they called for opinions of the witness, and that, until his note book was produced, there was no foundation for a conclusion

that the tile had or had not been laid at the depth or grade Brooks had specified. We cannot agree that these questions called for the conclusion of the witness. He had personal knowledge of the manner in which the tile was laid. The absence of the note book might affect the weight of the testimony, but not its admissibility. Kies v. Warrick, 149 Minn. 177, 182 N. W. 998. To deprive appellant of the benefit of Lambert's testimony on a vital issue in the case was prejudicial error.

Lambert knew whether the contractors had done their work in accordance with Brooks' plans and specifications. The work was done under his supervision. It was his duty to see that it was done in the manner prescribed by the contract, and the questions called for statements of fact. The modern tendency is all in the direction of liberality in the admission of evidence. Dun. Dig. § 3312. As an illustration, see Phillips v. Menomonie H.-P. B. Co. 109 Minn. 55, 122 N. W. 874, a case where the performance of a contract was in issue and it was held that the trial court, in its discretion, might allow a party to testify that he had performed the contract, if the answer amounted to no more than a mere shorthand rendering of the facts.

Certain questions of law, fully argued in the briefs, will come up again when the case is retried. It seems desirable that we should state our views as to some of these questions.

2. Appellant attempted to prove that the contractors dug the ditch to a depth and laid the tile at the level indicated by the grade stakes set by Lambert. The court ruled that such evidence was inadmissible, unless it was shown that the grade shown by Lambert's stakes was the same as the grade shown by Brooks' profiles and required by the contract. The ruling was correct. The provisions of the contract relative to directions given by the engineer did not relieve the contractors from their obligation to do the work in accordance with the plans and specifications.

Brooks was the engineer appointed by the court to make the survey and prepare the plans and specifications. These were the plans to which the court gave its approval. They were the bases

for the assessment of benefits. The contractors' bid was based upon them. The contract obligated the contractors to dig the ditch and lay the tile in accordance with their requirements. The engineer had no authority to modify them during the progress of the work without the consent of the court. G. S. 1913, §§ 5526, 5555.

Defendant takes the position that, if it could show that the tile was laid at the depth indicated by Lambert's grade stakes, it need not go further and show that this was the depth required by Brooks' specifications and profiles. The court is of a contrary opinion. Neither Brooks nor Lambert had any authority except such as was conferred on them by the statute. Lambert had certain duties to perform while supervising the work of the contractors. His duties were defined by the statute. In discharging them he represented the two counties. Seastrand v. D. A. Foley & Co. 135 Minn. 5, 159 N. W. 1072. His authority was derived from the law. He had no authority to direct the contractors to do the work in any other manner than the law required. By statute, as well as by the express terms of the contract, the contractors were bound to do the work in the manner specified in Brooks' survey and report. When they notified the engineer that they had completed the job, it became his duty to inspect the work and, if he found that they had completed it according to the contract, plans and specifications, it was his duty to report that fact to the court and give the contractors a certificate to that effect. G. S. 1923, § 6694.

The limited authority of the engineer is shown by the last proviso of the section, which declares that none of the certificates issued by the engineer under the drainage law shall constitute prima facie or other evidence of the truth of the contents thereof, or of the fulfilment of the contract. In referring to this provision, it was said in State v. Clarke, 112 Minn. 516, 128 N. W. 1008, that the engineer is not clothed with authority to relieve the contractor from a substantial performance of the contract, and Gilbertson v. County of Blue Earth, 145 Minn. 236, 176 N. W. 762, is to the same effect.

We hold that defendant could not escape liability by a mere showing that the ditch was dug and the tile laid at the depth and

on the grade indicated by the stakes set by Lambert and that, to defend successfully on the ground that the contractors had fulfilled their obligation, it was necessary to show that the work had been done as provided by the contract and by Brooks' plans and specifications.

The answer to the suggestion that such a ruling will place contractors at the mercy of incompetent or dishonest supervising engineers is that they may sue on the engineer's bond to recover their damages, and that the engineer is not the representative of the property owners who must pay for the work and who have a right to insist that it shall be done in substantial compliance with the original survey and report upon which their assessment was based.

We are not concerned with the rules applicable to building contracts in general. A drainage contractor is bound by the provisions of the drainage law. Drainage proceedings are special proceedings and we must look to the pertinent provisions of the statute and not to the common law to ascertain the rights and duties of contractors.

3. The contractors sublet a portion of the work. The engineer issued his certificate to the subcontractor pursuant to G. S. 1923, § 6694. In reliance thereon, the contractors paid the subcontractor. For the reasons already stated, we do not sustain the contention that these facts estop respondents from recovering the cost of remedying defects in the subcontractor's work.

4. An open ditch through Law Lake was changed to a tile drain. This was done pursuant to an order of the district court based on the written application of the engineer and with the consent of the contractors, but without notice to appellant. The change added 10 per cent to the cost of the work. It was authorized by virtue of that portion of G. S. 1923, § 6678, which provides for the modification of the plans and specifications during the progress of the work. The substance of the provision is found in the contract, but 2 instead of 10 per cent was written. At one time the statute limited the increase in cost to 2 per cent of the contract price, but, prior to the initiation of this proceeding, the statute had been amended and the limit fixed at 10 per cent.

In view of the rule that a contract made in the course of a proceeding under a statute is presumed to have been made with reference to the provisions of the statute and that such provisions are to be read into the contract, Bohn v. McCarthy, 29 Minn. 23, 11 N. W. 127, and in view of grave doubt as to the power of the parties to the contract to deprive the engineer and the court of the right to exercise the authority expressly conferred by section 6678 for the evident purpose of securing an efficient system of drainage, the contract should be read in conjunction with the statute and is controlled thereby. This was conceded in the course of the argument, and the case should be tried as though the contract read 10 per cent instead of 2 per cent.

5. There are several reasons why appellant cannot escape liability on account of this change in the plan of construction. In the first place, the answer does not set up as a defense a release of liability by reason thereof. In the second place, the contract expressly provides that changes may be made. And in the third place, after notice of the contractors' default, appellant took charge of the work with knowledge of the change, undertook to complete it, and obtained respondents' consent to the release of the retained percentage of the contract price. This clearly amounted to a waiver of notice of the proposed change. MacLeod v. Nat. Surety Co. 133 Minn. 351, 158 N. W. 619.

The other questions discussed in the briefs require but one comment: The circumstances under which the culvert beneath the public highway was constructed, and its effect as an obstruction to the flow of water in the open ditch, should be brought out at the trial in order to give the court all the facts relative to the issue under the pleadings in respect to the culvert and the legal consequences of its construction and maintenance.

For the reasons stated above, the order appealed from is reversed and a new trial granted.

STONE, J. (concurring.)

Concurring in the result, such consideration as I have been permitted to give the case compels me to express doubt concerning one proposition decided and another involved in the opinion.

1. We hold the engineer to be the duly authorized *agent of the county* responsible both for the design of the ditch and the supervision of its construction. Yet we are holding the contractor and not the county liable for a dereliction of the engineer. (There is nothing in the contract requiring the contractor to verify the work of the engineer).

If the plans and specifications call for one thing and the engineer for another, what is the contractor to do? Assuming good faith and due care, he cannot take the responsibility for saying that the engineer's direction is wrong and not in accordance with the plans and specifications. They are the work of the engineer and he is their proper interpreter. The contract makes him the superintendent of the work. The contractor is bound, contractually, to abide the engineer's direction however it is expressed. The stakes set by the engineer with the cross section dimensions they indicate are express directions of the engineer which the contractor is bound to follow. If the responsibility for compliance in detail with plans and specifications were divided between contractor and engineer, public work would be intolerably delayed while the two were finding some way to settle their disputes. To avoid any such absurd situation, the engineer's directions, given and complied with in good faith, are final.

It must follow that, in case of a variance between the plans and specifications and the directions of the engineer, the contractor has performed his contract if, with due care and good faith, he has complied with the latter. The difficulty is not chargeable to any default on his part. The error is that of the county, committed by its representative. Where, in matters of contract, loss accrues from such a delinquency, it is obnoxious both to logic and morals and should be equally odious to law, to penalize the legally blameless party for the benefit of the one legally responsible.

It seems entirely beside the question that the contractor may recover on the engineer's bond. That would be small satisfaction where a large public work must be done over at a cost many times that of the penalty of the bond of the delinquent engineer. But the bond and its attendant rights are but incidents of the situation, wholly fortuitous and in no wise altering the question or removing its solution from the controlling principle that one is liable for the misdoings of his agent within the scope and course of the business delegated to him.

In this case, the specifications recited that the line of the ditch was "indicated on the ground by stakes which have been set by the engineer" and provided also that "the depths and grades given by him shall constitute *a part of these specifications.*" It is open therefore to very persuasive if not convincing argument that in complying with the requirements of the engineer, expressed by his depth and grade stakes, the contractor was complying as well with the specifications, of which the requirements of the stakes were expressly and contractually a component part.

Counsel have referred us to no authorities on this point and I have been prevented from making an independent search for them. But the general principle—that the contractor should not be held responsible legally for the fault of the engineer—is well established. U. S. v. Spearin, 248 U. S. 132, 39 Sup. Ct. 59, 63 L. ed. 166, and cases cited, inter alia, U. S. v. Utah, N. & Cal. Stage Co. 199 U. S. 414, 26 Sup. Ct. 69, 50 L. ed. 251, holding that "the contractor should be relieved, if he was misled by erroneous statements in the specifications."

2. The opinion is not based upon but does mention section 6694, G. S. 1923, providing that any "certificate or certificates of the engineer in * * * ditch proceedings of [or] any other estimate or certificate required under any of the drainage laws of this state to be made by him, shall not constitute prima facie or other evidence of the truth of the contents thereof, or of the completion of any ditch or any part thereof by the contractor or otherwise, or of the fulfilment of the contract or part thereof." That provision deals

with no matter of substantive law. It concerns a rule of evidence only and attempts to deny the documents in question all evidentiary effect, notwithstanding their intrinsically high probative character.

In practical operation, the contractor's superintendent is on the job every day working with the engineer. Any admission, though casual, made by him during the work and in consequence of it is a part of the res gestae and remains admissible as evidence. Yet a similar statement, not casual but deliberate, in writing and legally required of the engineer, who occupies to the county a relation similar to that of the superintendent to the contractor, is by arbitrary declaration of the statute denied any weight as evidence. It can't even be used to impeach its author. The contractor's records are competent and weighty evidence *against* him. Yet the law attempts to say that the public records, if they consist of statements in writing by its engineer, are not to be considered by the judge or jury who must try the fact. He may be impeached by a carelessly uttered oral statement, but his calculated written ones may not be so used.

May it not be beyond the constitutional competency of the state, in dealing with its rights as a contractor and possible litigant, to handicap its opponent by any such one-sided and utterly dishonest rule of evidence; one which attempts to say that its own admissions against interest, however solemnly made, shall have no weight as evidence while those of the contractor retain their former probative force? May not such handicapping of one litigant by denying it the use of such obviously relevant, material and persuasive evidence be a violation of the constitutional guaranties of due process and equal protection of law, the purpose of which is to "secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." Bank of Columbia v. Okely, 4 Wheat. 235, 4 L. ed. 559.

The investigation and determination of litigation are judicial not legislative functions. It is not for the lawmaking power to say what weight shall be given or that none shall be attached to evi-

dence which is clearly relevant, material and of obvious probative effect. The legislature may declare that certain things shall be prima facie evidence. That is but shifting the burden of proof. But it cannot make them conclusive, unless it is dealing with a matter of substantive law. How can it so far control judicial actions as to say that the latter can attach no weight to evidence which has in fact great probative force and is frequently decisive.

There is plenty of authority for this view. In Vega Steamship Co. v. Consolidated Elev. Co. 75 Minn. 308, 77 N. W. 973, 43 L. R. A. 843, 74 Am. St. 484, it was held that the legislature could not so far interfere with judicial investigation of facts as to make conclusive certificates of weight of the state weighmaster. "The legislature cannot in this manner provide for the arbitrary exercise of power, so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law which deprives him of his day in court." In State ex rel. Roche v. Rogers, 97 Minn. 322 (328), 106 N. W. 345 (347), it was observed that "the control of the legislature over the subject of evidence proper is generally subject to the limitation that it must not arbitrarily forbid the investigation of facts." In Meyer v. Berlandi, 39 Minn. 438 (442), 40 N. W. 513 (515), (1 L. R. A. 777, 12 Am. St. 663), a law was held constitutionally objectionable because of its arbitrary attempt to make certain evidence conclusive. Its effect to "preclude a party from showing the truth, would be nothing short of confiscation of property and a destruction of vested rights without due process of law." In Howard v. Moot, 64 N. Y. 262 (268), it was taken as conceded "that a law that should make evidence conclusive which was not so necessarily in and of itself, and thus preclude the adverse party from showing the truth, would be void * * *." Dean Wigmore's conclusion is this:

"The legislative function is separate from the *judicial function*; and a statute which attempts in effect to exercise a judicial power is invalid. The judicial power involves the application of the law to concrete facts and, therefore, the investigation and establish-

ment of the facts. Any statute which prevents the judicial body from ascertaining the facts in litigation coming properly before it is ineffective." (1 Wigmore, Ev. [2d ed.] 89).

As observed in Pleasants v. Meng, 1 Dallas, 380, 1 L. ed. 185, "the nature of evidence necessarily implies an adverse right to controvert and repel." It ought to be clear, therefore, that one party to litigation cannot be denied the privilege of introducing highly important and possibly decisive evidence while the other party is subjected to no such restriction of his proof. The denial of due process and equal protection of the law in such cases is obvious.

The first point thus questioned has been argued both in the briefs and at the bar, but without citation of relevant authority. It is important and might prove decisive of this case. The latter point may not be of much present moment, but it is enough of a question so that it ought not to be passed over lightly or its answer assumed. I think there should be a reargument, accompanied by more extended study of both problems than we have had the benefit of so far.