## COUNTY OF HENNEPIN v. K. C. RICHARDSON AND OTHERS.[1]

June 29, 1928.

Nos. 26,676, 26,677.

**Failure to lay tile of county drain at specified depth, even with consent of engineer, is breach of contract.**

1. Laying the tile of a county ditch at a depth substantially less than required by the contract is a breach thereof although done by agreement with the engineer, for he cannot relieve the contractors from the obligations of the contract.

**How cost of completing county ditch contract is to be computed.**

2. The contractors and their surety having failed to complete the ditch, the statute requires the county to cause it to be completed unless the cost will exceed the limit fixed by statute. In determining whether the cost will exceed that limit, payments to the contractors for work done contrary to the contract and of no benefit to the project are to be excluded.

**Remedy of county when ditch can be completed within statutory limit.**

3. It appearing that the ditch can be completed within the statutory limit, the remedy of the county is to cause it to be completed and to recover from the contractors and their surety its expenditures in excess of the contract price.

[1]Reported in 220 N. W. 432.

**Surety estopped from denying its liability to county.**
4. The finding that the surety waived the failure of its principals to sign the bond and is estopped from denying liability thereon is sustained by the evidence. Whether the surety would be bound in the absence of waiver or estoppel, the bond being given to secure performance of a contract signed by the principals, is not decided.

Drains, 19 C. J. p. 691 n. 29; p. 692 n. 39.
Principal and Surety, 32 Cyc. p. 42 n. 56; p. 138 n. 42.

Action in the district court for Hennepin county to recover for breach of a contract for the construction of a county ditch. There were findings for the plaintiff, and the defendants separately appealed from an order, Baldwin, J. denying their motions for a new trial. Reversed.

*Will A. Blanchard,* for appellants Richardson & Ridge.

*Herbert T. Park,* for appellant Union Indemnity Company.

*Frank J. Williams* and *William G. Compton,* Assistant County Attorneys, for respondent.

TAYLOR, C.
On October 10, 1921, plaintiff and defendants Richardson & Ridge entered into a contract whereby Richardson & Ridge (hereinafter called the contractors) agreed to construct county ditch No. 35 of Hennepin county according to designated plans and specifications for the sum of $14,878.70. Defendant Union Indemnity Company executed a bond to plaintiff to secure the performance of the contract. The plans and specifications and the bid of the contractors are made a part of the contract, and it appears therefrom that the contractors were to perform all the work and furnish all the material for the construction of a tile ditch consisting of a main ditch of 140 stations of 100 feet each and three laterals; that the price bid therefor was a specified sum per lineal foot for laying each specified size of tile, amounting in the aggregate to the sum stated in the contract as the contract price; and that the contractors were to lay the tile at a specified depth and grade, and were to refill the trench so as to leave the surface of the ground in its natural condition. The contract contains this provision:

"In the event that solid rock, shale rock or any material that cannot be excavated without drilling or blasting is encountered, the contractor shall be paid at the rate of 15% above cost in lieu of prices set forth in bid."

The stations on the main ditch are numbered consecutively from 1 to 140 beginning at its source. The contractors began work at the outlet and constructed the ditch as required by the plans and specifications from station 140 to station 113 and were paid $3,006 therefor. It is conceded that this part of the ditch was constructed in the manner required by the contract; that the contractors were entitled to the payment received therefor; and that this suit involves only the work done on the remainder of the ditch and the payments made on monthly estimates as this part of the work proceeded.

At station 113 the contractors encountered rock. Instead of excavating to the required depth they excavated only to the rock and laid the tile on the surface of the rock. This was done by agreement with the engineer but without the consent of the county board. It was deviation from the contract which constituted a breach thereof, for the engineer could not relieve the contractors from their obligation to lay the tile at the specified depth. County of Blue Earth v. National Surety Co. 164 Minn. 390, 205 N. W. 277. By the time the work of construction reached station 22, it became evident that the deviation from the required grade had been so great that the ditch would not carry water from the land to be drained and was useless for the purpose intended. The trench had been refilled as the tile was laid, and to place the tile at the contract depth and grade would require digging a new trench and excavating the rock to the proper depth. The contractors abandoned the job and refused to complete the contract. They had been paid on monthly estimates for work done and material furnished on this part of the job, amounts aggregating the sum of $9,140.37. In 1926 plaintiff brought this suit against the contractors and their surety setting forth the breach of the contract and asking to recover the amounts so paid as damages resulting from the breach. The court

made complete and detailed findings of fact and directed judgment for plaintiff for the amounts so paid and interest thereon less the sum of $249.26 allowed for tile on the ground and not laid. The contractors and the surety made separate motions for a new trial and took separate appeals from the order denying their respective motions.

At the trial plaintiff proved the facts above outlined and the amounts paid to the contractors but made no attempt to prove the amount of damages in any other manner, asserting that the action was based on the theory

"that the contract has been breached, and that the only measure of damages is the partial payments which have been made under the contract, the only yardstick which will or can measure the damages which have been sustained by the plaintiff."

The action was tried by plaintiff on that theory, and the court made its findings in accordance therewith.

Defendants contended throughout the trial and contend here that the partial payments made by plaintiff are not the measure of damages and that plaintiff's remedy is to relet the job as provided by G. S. 1923, § 6691. In support of their contention defendants urge that the county is not a party to the proceeding in its proprietary capacity but only as a government agency; and that its duties in respect thereto are prescribed by the statute and must be performed in the manner directed by the statute. This is undoubtedly true. County of Blue Earth v. Bisballe Constr. Co. 171 Minn. 20, 213 N. W. 30. The statute cited provides that a job not completed by the contractor or his bondsmen

"shall be resold by the auditor, * * *, after ten days' notice by publication, to the lowest responsible bidder, but not for a sum exceeding fifty per cent in excess of the original estimated cost of such work,"

and that the excess, if any, of the cost of so completing it shall be recoverable from the bondsmen of the original contractor. The statute plainly intends that where neither the contractor nor his

bondsmen complete the ditch, the county shall cause it to be completed, and in that event shall be entitled to recover as damages the amount, if any, by which the total cost of constructing and completing it exceeds the contract price. This is the usual measure of damages in such cases. Carli v. Seymour, Sabin & Co. 26 Minn. 276, 3 N. W. 348; City of Winona v. Jackson, 92 Minn. 453, 100 N. W. 368; Haney v. Ferch, 150 Minn. 323, 185 N. W. 397; City of St. Paul v. Bielenberg, 164 Minn. 72, 204 N. W. 544.

Pursuant to the provisions of the statute, the auditor advertised for bids to complete the work and received one bid of $11,742.50. The engineer had estimated the cost of the ditch at the sum of $16,027.08. The viewers had assessed the total benefits at the sum of $21,318. Plaintiff had paid out on account of the ditch the sum of $15,467.96. Plaintiff contends that it could not lawfully let the contract to complete the ditch for the reason that the amount of the bid added to the amount previously paid out would make the cost of the ditch exceed the estimated cost by more than 50 per cent and would also make the cost exceed the total amount of benefits.

It is true that a ditch cannot lawfully be constructed if the cost will exceed the benefits. Alden v. County of Todd, 140 Minn. 175, 167 N. W. 548. It is also true that the statute forbids reletting the work for a sum which will make the cost exceed the estimated cost by more than 50 per cent. But here plaintiff contended, and the court found, that in the work done above station 113 the contractors "wilfully and intentionally" deviated from the contract by changing and raising "the grade of this portion of said ditch several feet above the grade required by said contract," and that the work so done varied from the requirements of the contract to such an extent that none of it will be "of any value in connection with said drainage project." Plaintiff's claim, that in order to complete the ditch according to the contract an entirely new ditch must be constructed above station 113 and that the expense of constructing it will be the full cost of a new ditch as none of the work done or tile laid by the contractors can be utilized in the new work, seems to be undisputed and is borne out by the findings.

The statute requires that the cost of the ditch shall be assessed against the property benefited by its construction. The cost of work done contrary to the requirements of the contract and which will be of no benefit in carrying out the project cannot be considered as a legitimate expense chargeable to the ditch and assessable against the property to be benefited by its construction. Unnecessary and useless expense caused by a breach of the contract should not be saddled upon the landowners. In determining the cost of the ditch, we think that payments made to the contractors for work which was found to be so defective that it is of no benefit to the project and will in no way further the construction of the ditch should not be included. Excluding such payments, the cost of completing the ditch, as shown by the bid received, will be well within the statutory limits.

If plaintiff's theory be correct and plaintiff can and has abandoned the project, the result will be unfortunate, for the wet lands will remain undrained and no benefit will be derived from the expenditures already made. Plaintiff has expended some $6,000 over and above payments which it seeks to recover; and if the project is abandoned this amount will be a total loss, for there will be no benefited property against which it can be assessed. But the ditch having been regularly and lawfully established, the petitioners are entitled to have it constructed; and the statute imposes upon the county the duty to cause it to be completed unless the necessary cost will exceed the limits fixed by the statute. It does not appear that the cost will exceed those limits, and the statute requires the county to proceed in the prescribed manner to complete the work.

The statute also gives the county the right to recover from the contractors and their bondsmen the expense over and above the contract price necessarily incurred on account of their failure to complete the job. The contract provides that where rock is encountered the contractors "shall be paid at the rate of 15% above cost." Whether the cost of constructing the ditch through the rock now is greater than the amount to which the contractors would have been entitled had they constructed it within the time required by

the contract will be a matter of proof. But in determining the amount of damages for which the contractors and surety will be liable, the partial payments made on account of work in which they deviated from the requirements of the contract to such an extent that it is of no benefit to the project will be properly chargeable against them.             ,

Defendant indemnity company further contends that it is not liable upon the bond for the reason that the bond is not signed by the contractors although they are named as principals therein.

The contract and bond are both printed upon the same sheet of paper. The contract was duly executed by the contractors on October 10, 1921. The bond, which is joint and several in form, was executed and acknowledged by the indemnity company through its authorized agents on October 17, 1921. It was sent by these agents to defendant Richardson with a letter in which they say:

"We are pleased to enclose bond  *  *  *  duly executed on behalf of Wayne L. Ridge and yourself, covering your contract with Hennepin County for the construction of county ditch 35."

It was filed in the office of the county auditor and duly approved on October 19, 1921. On the same day the deputy county auditor informed the agents who had executed the bond that the contractors had failed to sign it, and was requested by them to take the matter up with the contractors. Thereupon he wrote the contractors that they had omitted to sign the bond and that the indemnity company suggested that they come to the county auditor's office and sign it. They neglected to do so. The indemnity company at all times recognized the bond as being in force. From time to time it asked for and received reports of the status of the work and of the amounts paid to the contractors. At the end of the year covered by the first premium, it extended the bond for another year and charged the premium therefor. The court found:

"That the defendant Union Indemnity Company waived the signing of said bond by said principals and authorized its delivery to the plaintiff as a valid obligation, and ever since its delivery to the plaintiff, down to the time of the trial of this action, the defendant

Union Indemnity Company recognized the same as having been executed and delivered as a valid and binding obligation and during all of the said time permitted and induced the plaintiff to rely upon the same as such valid and binding obligation; that the plaintiff in reliance upon said conduct of the defendant Union Indemnity Company permitted the work to proceed and made the payments to the defendants K. C. Richardson and Wayne L. Ridge as herein set forth."

Whether the sureties are liable upon a bond in which the principal and sureties are named as obligors and which is signed by the sureties but not by the principal is a question upon which the courts disagree. The cases are cited in a note in 12 L.R.A.(N.S.) 1105; also in 32 Cyc. 41. Where the rights of the sureties are affected prejudicially by the failure of the principal to sign the bond, the weight of authority is to the effect that they are not liable thereon unless it appears that they intended the bond to go into effect without his signature. But where the bond is given to secure the performance by the principal of a contract executed by him, the weight of authority is to the effect that the sureties are liable thereon as the obligation of the principal is fixed by the contract, and his failure to sign the bond does not affect their rights or obligations.

Where the principal is named as one of the obligors in a bond signed only by the sureties this court has held that the bond "does not upon its face show any obligation on the part of such sureties." State ex rel. Supervisors v. Austin, 35 Minn. 51, 26 N. W. 906; Martin v. Hornsby, 55 Minn. 187, 56 N. W. 751, 43 A. S. R. 487; Safranski v. St. P. M. & M. Ry. Co. 72 Minn. 185, 75 N. W. 17; Bjoin v. Anglim, 97 Minn. 526, 107 N. W. 558; School District No. 80 v. Lapping, 100 Minn. 139, 110 N. W. 849, 12 L.R.A.(N.S.) 1105. The fact that where the bond is given to secure the performance of a contract executed by the principal he is bound as fully as if he had executed the bond, deemed controlling by several courts, does not appear to have been taken into account or considered in the above cases. Whether this court should give that fact the effect given it by the courts referred to we have no need to determine in this case, for all the cases above cited recognize that the sureties

may waive the signature of the principal, or may be estopped by their conduct from denying liability. The finding of the trial court to the effect that defendant indemnity company waived the signature of the contractors and is estopped by its conduct from denying liability on the bond is sustained by the evidence. This brings the case within the firmly established rule.

Furthermore, the facts are sufficient to bring the instrument within the principle of Village of Farmington v. Reisinger, 174 Minn. 56, 218 N. W. 444, under which a bond not signed by the principal but given for the purpose of complying with the requirements of the statute, and relied upon as furnishing the security required by the statute, may be given effect as an undertaking.

We reach the conclusion that plaintiff is not entitled to recover on the theory asserted by it, and the order is reversed, but without prejudice to the right of plaintiff to proceed in the manner directed by the statute and to recover from the contractors and their surety its expenditures in excess of the contract price.