**In re GUARDIANSHIP OF Sam D. HAMPTON, Jr., a/k/a Samuel David Hampton, Ward.**

**No. C1–84–937.**

Court of Appeals of Minnesota.

Dec. 31, 1984.

John Myron Lund, Lund & Lund, Minneapolis, for appellant.

William Lasley, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and CRIPPEN and HUSPENI, JJ.

## OPINION

LANSING, Judge.

This is an appeal by the ward, Sam D. Hampton, from an order determining that the Empire Fire & Marine Insurance Co. is not liable on a $21,000 surety bond because his guardian did not sign or file it with the court as required by Minn.Stat. §§ 574.01 and .22 (1982). We reverse.

## FACTS

Samuel D. Hampton, Jr., was found to be mentally ill and dangerous in December 1976. He was committed to the maximum security hospital in St. Peter and is presently confined there.

In July 1981 he petitioned for appointment of his sister, Brenda Hampton, as guardian of his estate because the Veterans Administration (VA) would not pay his monthly disability benefits to him while he was in St. Peter. James Hall, legal counsel for the VA, represented Samuel Hampton at this hearing. Brenda Hampton was appointed guardian, obtained a $5,000 surety bond from the Empire Fire & Marine Insurance Co. through the Patrick Thomas Agency, and filed it with the court at that time.

In November 1982 Brenda Hampton was ordered to appear personally before the

court for failing to file an annual account of the ward's estate. Her attorney appeared for her and advised the court that she had $26,000 of her brother's assets. In December the court ordered her to file an additional bond for $21,000 and to present her annual account. Her attorney assured the court that she would comply.

Brenda Hampton called Rick Davies at the Patrick Thomas agency at the end of December to arrange for the supplemental bond. On January 10, 1983, Davies executed the bond. He testified that he mailed it to Brenda Hampton with the premium invoice and a note telling her to sign it and have it notarized. She never received the bond, invoice, or note.

The court suspended Brenda Hampton's guardianship powers on January 17, 1983. She tendered her resignation on January 26. Shortly thereafter the bond and the invoice were discovered at the office of James Hall, the VA counsel. The invoice had both his address and Brenda Hampton's address on it. The trial court's memorandum indicates that Davies used the wrong type of mailing envelope so that Hall's address showed through the envelope window instead of Hampton's. Hall put the bond in Sam Hampton's file at his office, so Brenda Hampton never had the opportunity to execute or file it with the court as required by Minn.Stat. §§ 574.01 and .22 (1982). In June 1983 the Richfield Bank & Trust Co. was appointed successor conservator of the estate.

A series of hearings was held through February 1984 on various objections to Brenda Hampton's final account of the ward's estate. On April 27, 1984, the court determined the bond company was not liable on the supplemental bond because Brenda Hampton had not complied with the statutory requirements. When the final account was settled in May the court found that she had dissipated $29,729.18 of the estate through "loans" to other family members. The court surcharged her in that amount, directed the bond company to pay only the original $5,000 bond, and discharged her as guardian in June 1984.

## ISSUE

Is Empire Fire & Marine liable on the supplemental bond even though the principal did not execute the bond or file it?

## ANALYSIS

Minn.Stat. § 525.551, subd. 6 (1982), provides:

> Upon the filing of a bond by the guardian or conservator of an estate in an amount the court may direct * * * letters of guardianship or conservatorship shall issue. If there is no personal property, the court may waive the filing of a bond, but if the guardian or conservator receives or becomes entitled to any property of the ward * * * he shall immediately file a report thereof and a bond in an amount the court may direct. In case of breach of a condition of the bond an action thereon may be prosecuted by leave of the court by any interested person or by the court on its own motion.

■ Minn.Stat. § 574.01 (1982) provides that "Every bond or recognizance shall also be signed by the principal, and every bond shall be acknowledged by the principal and sureties." Minn.Stat. § 574.22 (1982) further provides:

> All bonds required or permitted by law to be given in actions or proceedings in any court shall be filed in such court, unless especially required by law to be filed * * * elsewhere, or unless the judge * * * shall, by written order, direct some other disposition thereof.

These requirements apply to bonds required of public officials and to those required by statute. *See Blied v. Barnard,* 120 Minn. 399, 403, 139 N.W. 714, 715 (1913).

The trial court relied on *County of Hennepin v. Richardson,* 175 Minn. 60, 220 N.W. 432 (1928), and *Southern Surety Co.*

*v. Tessum,* 178 Minn. 495, 228 N.W. 326 (1929), to conclude that the principal must sign and execute the bond unless those requirements are waived by the surety. The court found that Empire Fire & Marine, through its agent, Rick Davies, did not intend to waive those requirements.

■ We think it misconstrues the statute's purpose to find the bond company has the option of waiving requirements that were clearly meant to protect the ward's estate. Furthermore, fidelity bonds issued by bonding companies for compensation are now regarded as insurance policies, in substance, and are governed for the most part by insurance law rather than suretyship law. *Hayfield Farmers Elevator & Mercantile Co. v. New Amsterdam Casualty Co.,* 203 Minn. 522, 528, 282 N.W. 265, 268 (1938).

■ In Minnesota oral insurance contracts are valid. An insurance agent, acting with actual, apparent, or implied authority, can bind the company to coverage by oral representations to the insured. *St. Paul School District No. 625 v. Columbia Transit Corp.,* 321 N.W.2d 41, 45 (Minn. 1982). The determination of whether the insurance was in effect depends on all the facts, including the course of conduct between the insured and insurer. Payment of the premium is only one factor to be considered. *See St. Paul Fire & Marine Insurance Co. v. Bierwerth,* 285 Minn. 310, 319, 175 N.W.2d 136, 141–42 (1970).

Rick Davies testified that the only predicate for issuance of a bond is a court order requiring the guardian to obtain it, and that it was "pretty much standard procedure to save time" for the agent to execute the bond, acknowledge it, and send it to either the guardian or the guardian's attorney with a note to sign and file it. He said he had followed this procedure in executing the supplemental bond, and in the ordinary course of events would not have expected to see the bond again.

Brenda Hampton testified that she obtained the first bond from Patrick Thomas, the agency president. He presented the bond for her signature in the lobby of the Hennepin County Government Center, acknowledged it himself at some later time, and filed it for her. When she called Rick Davies about the supplemental bond he asked for her name, address, and why the additional bond was required. She told him that the prior bond did not cover the value of the estate. He said he would "take care of it" and send her a bill that she should return with her payment. She understood from their conversation that the bond was effective immediately. On January 17 when she resigned as guardian, Patrick Thomas was in court. She asked him where the bond had been sent because she had not received it. He refused to answer her.

■ The record shows that the parties mutually assented to the contract. Brenda Hampton's failure to sign and execute the bond has no effect on their prior agreement. From the agency's standpoint, it had done everything required to make the bond a valid and binding obligation by January 10. The agency had bound Empire Fire & Marine by executing the bond. *See St. Paul School District No. 625,* 321 N.W.2d at 45. The agency's intent to be bound is evident from the fact that the bond was sent out of the office with no expectation of its return.

■ The statutory requirements have no effect on the risk the company assumed; they are solely meant to assure the court that the guardian has complied with the court order and that an authorized company has issued the bond. The agent's testimony in response to questioning about the statutory requirements reflects this understanding of their purpose:

Q: Was it ever your intention to waive any of those requirements that you understand are necessary for a valid and enforceable bond in the case of Brenda Hampton's $21,000 additional guardian's bond in this case?

A: *These are Court requirements, not our own.* For the surety standpoint, we have no intention to waive any requirement. We are just trying to follow our standard procedures and what the Court requires.

(Emphasis added). The record shows that the agency was unconcerned about the risk until it learned that Brenda Hampton's guardianship powers had been suspended on January 17. A superficial investigation before that time would have revealed that she was under court order to present the annual account.

■ Furthermore, the only reasonable interpretation of the evidence is that the agency itself sent the bond to the wrong person. If the bond had been sent to Brenda Hampton as requested, in all likelihood she would have signed and filed it, and there would be no dispute about the bond's validity. The company contends that without her signature it has no right of action against Brenda Hampton; it in fact has both a contract right, on her payment of the premium, and a subrogation right to collect from her the losses caused by her breach of duty.

## DECISION

■ Empire Fire & Marine Insurance Co. is bound on the supplemental bond for $21,000, despite Brenda Hampton's failure to sign and execute the bond, because its authorized agent made an oral contract to provide the bond.

It is further ordered that when the conservator—Richfield Bank and Trust Co.—receives $21,000 from the Empire Fire & Marine Insurance Co., the surety is discharged.

Reversed.