**In re GUARDIANSHIP OF Sam D. HAMPTON, Jr., a.k.a. Samuel David Hampton, Ward.**

**No. C1–84–937.**

Supreme Court of Minnesota.

Sept. 20, 1985.

W.M. Lasley, Minneapolis, for appellant.

John Myron Lund, Minneapolis, for respondent.

WAHL, Justice.

This matter concerns the enforceability of a guardianship bond issued by petitioner Empire Fire & Marine Insurance Company (Empire) to secure the performance of Brenda Hampton, the former guardian of respondent Sam Hampton. The probate court declared that Empire was not legally bound on the bond; the Court of Appeals, 359 N.W.2d 740, reversed and ordered the surety discharged when it pays $21,000 to the present conservator. Empire petitioned this court for further review. We affirm in part, and reverse in part.

Sam Hampton was found to be mentally ill and dangerous in December, 1976 and was committed to the security hospital at St. Peter, Minnesota. He is currently confined to that facility. Sam was entitled to monthly disability compensation benefits from the Veteran's Administration (VA), which, because of Sam's condition, the VA would not pay to him directly. On June 8, 1981, Sam filed a petition, initiated by the VA, for appointment of a guardian to manage his estate, naming his sister, Brenda Hampton, as a person competent to perform the duties of a guardian. After a hearing on July 30, 1981, at which Sam was represented by James Hall, counsel for the VA, Brenda was appointed guardian of Sam's estate.

At the July 30 hearing, Brenda was ordered to file a $5,000 guardianship bond for approval by the court. That same day, Brenda met with Patrick Thomas of the Patrick Thomas Agency, an agency that writes insurance and surety bonds, and with him executed the $5,000 bond. Patrick Thomas signed the bond as attorney in fact for Empire, the named surety on the bond. Brenda signed as principal, and both signatures were acknowledged. Patrick Thomas then filed the bond with the court on July 31, 1981, and the court approved it on the same day. The VA began disbursing Sam's monthly benefit checks and by December 17, 1982, Sam's assets under Brenda's guardianship had accumulated to over $26,000.

Brenda was obligated to file an annual accounting of Sam's estate with the probate court as a condition of serving as Sam's guardian. Her annual accounting was due on July 31, 1982. As of September 24, 1982, she had failed to file the account, however, and was directed by the court to do so. The court conducted a hearing on December 17, 1982, at which Brenda's attorney advised the court that Brenda had $26,000 of Sam's assets. The court ordered Brenda to file an additional $21,000 bond, and to put her annual account on for hearing. Brenda's attorney promised that both these matters would be attended to. Shortly thereafter Brenda contacted the Patrick Thomas Agency, spoke to Richard Davies, and advised him of the necessity for an additional $21,000 bond. She testified that this conversation took place just before Christmas, 1982, and that Davies told her that he would "take care of it."

On January 10, 1983, Richard Davies issued an additional $21,000 bond on behalf of Empire as surety, and mailed it, along with an invoice for the premium and instructions for execution of the bond. The invoice had the addresses of both Brenda and the VA attorney typed on it, in the following format:

Brenda Hampton
2659 Alabama Avenue
St. Louis Park, Minnesota 55416
   James R. Hall
   Federal Building, Fort Snelling
   St. Paul, Minnesota 55111

Had the bond been mailed in an envelope with the addressee window on the upper left, it would have been delivered to Brenda. Had it been mailed in an envelope with the window on the lower right, it would have been delivered to Hall. Davies testified that, under standard office procedure, the bond, instructions, and invoice should have been mailed to Brenda.

Brenda never received the bond, however. Her powers of guardianship were suspended following a hearing held on January 17, 1983 and she was ordered to deposit all evidence of assets belonging to the

guardianship estate and to put her final account on for hearing. On January 26, 1983, Brenda filed her resignation as guardian of the estate, but neither she nor Empire had been discharged at the time the trial court entered judgment on this matter.

The bond was discovered shortly after January 26 in an overflow basket in James Hall's office at the VA. The bond was never signed by Brenda, acknowledged, or approved by the court. Richfield Bank & Trust Company, subsequently named as guardian of Sam's estate, petitioned to have the validity of the bond adjudicated by the probate court.

The probate court concluded, after a hearing before a referee, that Empire was not liable on the bond, because Brenda had not signed the bond as principal and the bond had not been filed with the court. The court specifically found that Empire had not waived these requirements. The Court of Appeals reversed, holding that Davies' representation that he would provide the bond formed a binding contract rendering the bond valid and enforceable. Empire seeks reversal of the Court of Appeals' decision.

■ By statute, all guardianship bonds must be signed by the principal, acknowledged, filed with the probate court and approved by that court. Minn.Stat. § 574.01 (1984) sets forth the requirements for signature and acknowledgement:

> * * * Every bond or recognizance shall * * * be signed by the principal, and every bond shall be acknowledged by the principal and sureties.

The filing requirement is set forth in Minn. Stat. § 574.22 (1984):

> All bonds required or permitted by law to be given in actions or proceedings in any court shall be filed in such court, unless especially required by law to be filed * * elsewhere, or unless the judge * * * shall, by written order, direct some other disposition thereof.

When these requirements are not met, the bond is considered prima facie invalid.

*County of Hennepin v. Richardson,* 175 Minn. 60, 66–67, 220 N.W. 432, 434 (1928) (lack of principals' signature); *Nehring v. Haines,* 70 Minn. 233, 235–36, 72 N.W. 1061, 1062 (1897) (filing, approval by court lacking). It is undisputed that these requirements were not met in this case. Therefore, the bond is unenforceable as a statutory bond under the express terms of the statute.

■ That these requirements were not met is not necessarily dispositive of whether the bond is enforceable, however. A bond may yet bind a surety as a statutory bond if the surety waives these requirements, or by its conduct is estopped from denying liability. *Richardson,* 175 Minn. at 67–68, 220 N.W. at 435; *School District No. 80 v. Lapping,* 100 Minn. 139, 141–42, 110 N.W. 849, 850 (1907); *Martin v. Hornsby,* 55 Minn. 187, 191, 56 N.W. 751, 752 (1893). Moreover, this court has held that under some circumstances a surety may be barred from raising imperfect execution as a defense when the person seeking a determination that the bond is enforceable is not the principal, but the obligee or any other person intended to be protected by the bond. *Nehring,* 70 Minn. at 235–36, 72 N.W. at 1061–62.

■ The probate court expressly found that Empire did not intend to waive the statutory requirements of signature, acknowledgment and filing. Rick Davies testified that the surety expected the signature, authorization and filing requirements to be met. The bond was also marked by an "x" where Brenda's signature would have been executed had she received the bond, which suggests that that the company intended her to sign there. The company's past practice with Brenda Hampton is also consistent with an intention not to waive the requirements. When the $5,000 bond was executed, the company's agent had Brenda sign the bond, had it acknowledged, and himself filed it with the court. The probate court's finding that no waiver was intended is reasonably supported by the evidence.

We do conclude, however, that under the facts of this case the surety is precluded, as the sureties in *Nehring* were precluded, from raising the lack of the principal's signature and failure to file as a defense. In *Nehring*, we held that, when an obligee, not the principal, seeks enforcement of a bond, a surety may not raise technical noncompliance with the statute as a defense where the obligee had no duty to ensure compliance, where performance of the requirement was for the protection of the obligee, the requirement was not of the essence of the agreement between the principal and surety, and where technical noncompliance did not affect the liability of the surety. The issue before the court in *Nehring* was whether a bond issued to a candidate for elective office as principal, to secure payment of election inspectors, could be enforced by an election inspector when the bond had not been filed and approved by the court as required by statute. Both the sureties and the principal raised the failure to perfect the bond as a defense, but we rejected that argument stating:

> It appears to be conceded that the bond was not formally approved or filed, but this failure to perfect the bond or security was not the fault of the plaintiff [election inspector], but that of Haines [principal-candidate], and his misconduct in this respect cannot be pleaded as a bar to the maintenance of this action. Plaintiff had no control over the bond as to its approval or filing, and there was no duty imposed upon him in this respect. * * * * * * This approval and filing of the bond are for the protection of the obligee and those who render services and incur expense as inspectors and examiners, and not for the benefit of the obligors; and *it does not lie in the mouths of the principal or sureties to object that it was not approved or filed.* * * * The wrongful neglect of the principal Haines in not having the bond approved or filed cannot exonerate or release the sureties from their liability. Approval and filing of the bond were not of the essence of their contract, nor a condition precedent to the defendant's liability. * * * In the

case at bar the sureties had done all that they could do to complete the bond. It was under seal, signed and acknowledged by them, and they knew its contents and their obligations; and an innocent party should not be compelled to suffer through the wrongful neglect of the principal, which in no way operated to injure the sureties or affect their liability.

*Nehring*, at 234–36, 72 N.W. at 1061–62 (emphasis supplied).

■ Though the facts in this case are not identical to those in *Nehring*, the principle is equally applicable. Each of the factors found to support the enforceability of the bond in *Nehring* are present in this case. Just as the election inspector in *Nehring* had no duty to ensure that the bond was fully executed, Sam Hampton as ward had no duty to ensure that his guardian met her statutory obligations. Further, neither the signature requirement nor the filing and approval requirement are intended to protect the interests of the principal and the surety, but the interests of the ward. Moreover, the essence of the agreement between the surety and Brenda Hampton did not lie in compliance with the statutory requirements, but, as the bond instrument recites, in Brenda Hampton's promise to "well and faithfully discharge all of the duties of her trust" as Sam's guardian. As Richard Davies testified, the statutory requirements are "court requirements, not our own." Finally, Brenda's noncompliance with the statutory requirements did not affect the liability of the surety. The duties imposed on her as guardian, on which the bond is conditioned, are enumerated in our guardianship statutes. *See* Minn.Stat. § 525.56, subd. 4 (1984). Those duties, and thus the surety's resulting liability, are neither expanded nor contracted by the party's failure to properly execute and file the bond. Furthermore, where the surety by its own negligence in misdirecting the bond precluded the principal from taking the necessary additional steps to ensure strict compliance, "it does not lie in the [mouth] of the * * * suret[y]

to object" that the necessary steps were not taken. We hold that, under these circumstances, Empire may not raise technical noncompliance with the statutory requirements for guardianship bonds as a defense in this action by the ward to enforce the bond.

While we agree with that portion of the Court of Appeals' decision holding the bond enforceable, although for different reasons, we reverse that part of its decision ordering the petitioner discharged when Sam Hampton's present conservator, Richfield Bank & Trust Company, receives $21,000 from the petitioner. The sole question before the probate court in this matter was the validity of the bond issued by Empire. While that question is here resolved, the question of whether Empire is liable on the bond, and if so, in what amount, has yet to be decided by the probate court. We do not decide those issues *sua sponte* on this review. Moreover, whether and when the surety is discharged is a matter also to be determined in the first instance by the probate court.

Affirmed in part, reversed in part.